## The Mohawk Bridge Company vs. The Utica & Schenectady Rail Road Company.

The words " commencing *at* or *near* the city of Schenectady, and running thence on the north side of the Mohawk river," &c. in the charter of the Utica and Schenectady Rail Road Company, authorized the company to commence their rail road at some point on the north side of the river, *near* the city, or at some suitable point on the south side *at* or *within* the city and then to cross the river to the north side thereof, at their election; the middle of the river forming the north bounds of the city.   The right to build a bridge, for the purpose of crossing the river with their railways, was therefore granted to the company by the act for its incorporation.

The building of a bridge across the Mohawk river at the city of Schenectady by the rail road company, and the transportation of passengers across the river on such bridge in the rail road cars, in the ordinary course of business of conveying travellers upon the rail road, is not an infringement of the chartered rights of the Mohawk Bridge Company.

The grant to a corporation of the right to erect a toll bridge across a river, without any restriction as to the right of the legislature to grant a similar privilege to others, does not deprive a future legislature of the power to authorize the erection of another toll bridge across the same river so near to the first as to divert a part of the travel which would have crossed the river on the first bridge if the last had not been erected.

Grants of exclusive privileges, being in derogation of public rights belonging to the state, or to its citizens generally, must be construed strictly, and with reference to the intent and particular objects of the grant.

The court of chancery has jurisdiction to interfere by injunction to prevent the erection of a nuisance which will produce serious or irreparable damage. And if the thing sought to be prohibited is clearly a nuisance, and the complainant's right is not doubted, the court will grant an injunction without waiting the result of a trial at law.

But where the thing sought to be restrained is not in itself a nuisance, but only something which may, according to circumstances, prove to be so, the court will not interfere until the matter has been tried at law.

Where the magnitude of the injury to be dreaded from the noxious erection is great, and the risk so imminent that no prudent man would think of incurring it, the court will not refuse its aid for the protection of the complainant's rights. by injunction, on the ground of a bare possibility that the anticipated injury from such erection may not happen.

1837.

The Mohawk Bridge Co.
v.
The Utica & Schenectady R. R. Co.

July 18.

THIS was an application for an injunction, by the Mohawk Bridge Company and 24 others, to restrain the defendants from erecting a bridge for the passage of their railway across the Mohawk river at the city of Schenectady. The Mohawk Bridge Company were the owners of a toll bridge across the river about one hundred rods above where the defendants had commenced and were proceeding to erect their bridge for the passage of their rail road cars, locomotive engines and passengers on their railway; and the other complainants were land owners adjoining the river. The Mohawk Bridge Company alleged in the bill that the proposed erection would endanger the safety of their bridge by damming up the ice at the breaking up of the river; and also that the carrying of passengers across the river in the rail road cars would be a damage to the bridge company, by diverting the travel from their toll bridge; and would for that reason be an injurious interference with the exclusive privilege secured by their charter. On the part of the other complainants it was alleged that the erection of the proposed bridge would expose their lands adjoining the river to great injury at the breaking up of the ice in the spring. And all the complainants insisted that the rail road corporation was not authorized by its charter to erect a bridge, or to cross the river with its railway. On the part of the defendants, affidavits of engineers and others were introduced for the purpose of showing that no danger was to be apprehended from the erection of the bridge in the manner in which it had been commenced, and according to

1837.

The Mohawk
Bridge Co,
v.
The Utica &
Schenectady
R. R. Co.

the plan upon which the defendants proposed and intended to construct such bridge.

*J. M'Kown & D. D. Barnard*, for the complainants. The erection of piers in the Mohawk river, as the defendants are proceeding to do, would endanger the security and existence of the bridge belonging to the bridge company, and place the lands of the other complainants in hazard of being periodically or occasionally overflowed, and the soil and buildings of being removed and rendered useless or greatly injured. The imminent danger to the property of the complainants from the contemplated acts of the rail road company is a sufficient ground and reason for arresting and restraining those acts unless that company can make out a clear right in law and justice to proceed as they threaten to do, (4 *Paige's Rep.* 169. 18 *Ves.* 515. 9 *Idem*, 617. *Eden Inj.* 167, 8. 7 *John. Ch.* 332. 2 *Dow. P. R.* 519. 1 *Ves. sen.* 188.) The anticipated injury to the bridge and to the soil and buildings of the complainants would produce such great and irremediable mischief as damages could not compensate, because the mischief would reach to the very substance and value of the property, and would go to the destruction of it in the character in which it is enjoyed. (7 *John. Ch. Rep.* 332.) The erection of a new bridge, as threatened by the defendants, by which travel would be passed over the Mohawk at that point without paying toll to the bridge company, would be a direct interruption and invasion of the right of the bridge company to receive tolls according to its charter. (5 *John. Ch. Rep.* 110. 4 *Idem*, 160.) The defendants' act of incorporation does not on a fair construction give to the rail road company authority to construct a bridge over the Mohawk river where it is threatened to be done, and without this act the defendants have no pretence of authority for so doing. (17 *John. R.* 203.) If the defendants' act of incorporation does purport to give authority to construct such bridge, yet this court will restrain the exercise of that power. (20 *John. Rep.* 105, 744. 12 *Pick.* 184, 467. 7 *Cranch*, 164.) 1. Because the act so construed, if executed, would violate the spirit of

the constitution of this state and the law of natural right and justice by authorizing an injurious disturbance of the right and enjoyment of private property without any legislative provision for compensation. (2 *John. Ch. Rep.* 168, 463. *Cooper's Eq. Rep.* 77. 6 *Cranch*, 134, 5, 6, 7. 17 *John. Rep.* 203. 12 *Pick.* 482.) 2. Because the act so construed, if executed, would be in direct violation of the contract between the state and the bridge company, under which the bridge company are entitled to receive tolls for travel over the Mohawk by way of their bridge. The complainants have a clear and certain title to the property described in the bill, and are and have long been in peaceable possession thereof. The defendants set up no title to that property or any part of it, but only a claim of right to disturb the complainants in their enjoyment of it under the authority of a legislative act. It is not necessary, therefore, that the complainants should have their title established at law, and this court will judge of the validity of the authority set up by the defendants as their justification, and finding that authority insufficient, the chancellor will protect the complainants by injunction before answer. (9 *John. Rep.* 587.) A statute privilege, when in actual possession and exercise, will not be permitted to be disturbed until the opponent has fairly tried the right at law and overthrown the possessor's pretension. When such disturbance is attempted an injunction will be granted before answer. (2 *Paige's Rep.* 116. 9 *John. Rep.* 507. 1 *Paige's Rep.* 447.) A private corporation is liable to answer in this court to a bill by individuals or by another corporation in all cases of actual or threatened injury to private property, or to rights or franchises, where one natural person would be liable to answer to another natural person. And the case presented by this bill is within the jurisdiction of this court and proper for the exercise of its powers. The act incorporating the Utica and Schenectady Rail Road Company does not contemplate any interference with the franchise of the Mohawk Bridge Company. The latter company have an exclusive right to convey passengers across the river. This right extends one mile above and one mile below the bridge. The

1837.

The Mohawk
Bridge Co.
v.
The Utica &
Schenectady
R. R. Co.

grant to the Mohawk Bridge Company extends to the ordinary business of the country and to all vehicles for the conveyance of passengers and freight, whether of new or old invention. And this grant is exclusive. The prohibition against the erection of ferries, extends to bridges. Every grant is necessarily exclusive of all injurious competition. The defendants are attempting to exercise a franchise not granted to them. The right of building a bridge is a separate franchise, and requires a special grant. No private citizen without authority from the legislature can build a bridge over a navigable river. The act incorporating the defendants does not authorize the extension of their road into the city of Schenectady. The word *at* is exclusive in its meaning when used in statutes and grants. And the 9th section of the defendants' act of incorporation applies only to small streams, and not to the Mohawk river. And this act is void for want of proper provisions to make compensation to the owners of property taken or injured. Here is an attempt to take property without rendering compensation. (18 *John. Rep.* 397. 10 *Idem,* 389. 1 *Mass. Rep.* 9. 1 *Wm. Blak.* 20.)

*A. C. Paige & M. T. Reynolds,* for the defendants. The affidavits on the part of the defendants show that there is no danger of irreparable and permanent injury to the low lands and bridge of the complainants. There being no such danger, all that part of the bill charging danger of irreparable injury is to be deemed as stricken out, which will leave nothing but the claim of the exclusive right of the Mohawk Bridge Company to convey passengers across the Mohawk river at Schenectady. The misjoinder of the complainants and the misjoinder of causes or grounds of relief is an objection to this motion. There is not such a common interest between the complainants as to authorise them to unite as complainants in one suit. And clearly they cannot join in one bill the charge of danger of irreparable injury with a charge of an interference by defendants with the pretended exclusive right of the Mohawk Bridge Company, as in the latter question the owners of the low lands, who are

joined as complainants, have no interest whatever. The bill is defective in not alleging that the Mohawk Bridge Company have kept and sustained their bridge as required by their charter, and have always kept the same in repair so as fully to accommodate the public and to afford a passage with ordinary convenience and safety. This is a condition precedent to the enjoyment of any exclusive right. If the Mohawk Bridge Company had by express grant the exclusive right of transporting passengers across the Mohawk river, and did not or could not fully accommodate the public, the legislature could authorize additional accommodations to be provided to supply the deficiency. (*Per Morton, J., and Wilde, J., in* 7 *Pick.* 448, 457, *and* 475 ; *and per Parker, J., Id.* 512, 516 *to* 522.) And the legislature is the sole judge of what accommodations the public necessities and convenience require. (7 *Pick.* 466, 475, 6, 7, 2 *Kent's Comm.* 340. *See also* 1 *Ves. sen.* 476 ; 5 *John. Rep.* 110 ; 7 *Pick.* 513, 14 *and* 16 ; 6 *Barn. & Cres.* 365 ; 7 *Id.* 547.) The case shows that the Mohawk Bridge Company cannot accommodate the rail road trains. A preliminary injunction before answer rests in the discretion of the court, and will not be granted unless the injury is pressing and delay dangerous, and the complainants' right is indisputable. (2 *John. Ch. Rep.* 202, 463. 9 *John. Rep.* 507. 1 *Paige's Rep.* 97. 1 *Ves. sen.* 476.) But the Mohawk Bridge Company have no such exclusive right as is claimed. It is not expressly given. It is claimed under the clause prohibiting ferries. In governmental grants nothing can be taken by implication. (7 *Pick.* 519, 461. 2 *Black. Comm.* 347. 3 *Caines,* 293.) There is a distinction between privileges implied and those necessary to the enjoyment of the grant. Here the exclusive right is not necessary to the enjoyment of the grant. Exclusive privileges cannot be extended by implication. (2 *Paige's Rep.* 116. 7 *Pick.* 464, 469, 521. 2 *Cowen,* 419. 4 *Mass. Rep.* 145, 473.) If the Mohawk Bridge Company possessed such exclusive right, it would be confined to travelling in ordinary vehicles and would not extend to rail road conveyances. If the Mohawk Bridge Company have sustained consequential damages, this does not en-

1837.

The Mohawk Bridge Co.

v.

The Utica & Schenectady R. R. Co.

title that company to compensation. (7 *Pick.* 472, 473, 520. 1 *Id.* 418. 12 *Mass. R.* 220.) The defendants have a right to extend their road to the compact part of the city of Schenectady and to erect a bridge across the Mohawk river. A bridge is essential to the enjoyment of their grant. The right, therefore, to erect it can be implied. (10 *John. Rep.* 389. 15 *Id.* 358.) But the right of the defendants to extend their road across the river into the city of Schenectady is expressly granted. The word *at* used in their act of incorporation means *in*. And the 9th sec. of the act expressly authorizes streams to be crossed. The word streams includes the Mohawk river. (*Bac. Ab.* 380, tit. *Stat. L.* 2.) But as the defendants own the land on both sides of the river, they may without a grant erect a bridge for their own use, provided they do not interfere with the public right of passage on the river with boats, &c. and do not exercise the franchise of taking tolls. (5 *Cowen*, 528. 20 *John. Rep.* 90. 10 *Id.* 236. 5 *Wend.* 443.)

If the defendants' bridge is not a private nuisance to the Mohawk Bridge Company, the latter company cannot file a bill against the defendants. And if the nuisance is a public one, the Mohawk Bridge Company cannot obtain an injunction unless they show a special legal injury to such company. (6 *John. Ch.* 439.) The bill in this case prays for an injunction against the erection and not the use of the bridge. A preliminary injunction will not be granted against an act which, unless followed up, can do no injury. (10 *Pick.* 273. 6 *Idem*, 376. 1 *Fowler's Eq. Pr.* 157.)

THE CHANCELLOR. Being satisfied upon the hearing of this application that a preliminary injunction ought not to be granted, I have delayed the decision to give the Mohawk Bridge Company an opportunity, if they thought proper, to try the question in a suit at law against the defendants, whether the carrying of passengers across the river in the rail road cars, on their way to different places on the line of the road, was an infringement of the charter of the bridge company, as alleged in the bill in this cause. But perceiving from the published reports of the proceedings of the le-

gislature that the important questions raised upon the argument are considered as still before me for decision upon the present application, I shall proceed to dispose of the case upon its merits, without reference to the particular form in which some of those questions were brought before me.

The first and most important question raised upon the argument relates to the right of the defendants to erect a bridge and cross the river with their rail way, under the act incorporating the rail road company. The first section of the act, (*Laws of* 1833, *p.* 462,) gives power to the corporation to construct a rail road or way commencing *at or near* the city of Schenectady, and running thence on the north side of the Mohawk river as far as the village of Herkimer, and terminating in the city of Utica. And the ninth section provides that whenever it shall be necessary to intersect or cross any stream of water or any road or highway lying betwixt the places specified in the first section, it shall be lawful for the corporation to construct the rail road or ways across or upon the same. Under a similar provision in the act to incorporate the Rensselaer and Saratoga Rail Road Company, the supreme court and this court have both decided that the corporation had a right to erect a bridge upon piers for the purpose of carrying their rail ways across a navigable river, between the places prescribed for the commencement and termination of the road; subject to the condition prescribed in the act, that the usefulness of the stream should not be impaired thereby. (*The People* v. *The Rensselaer & Saratoga R. R. Co.* 15 *Wend. Rep.* 114. *Weaver & others* v. *The Same, in Chan.* April 4, 1837.) The only question upon this part of the case, therefore, is whether by the terms of their charter the defendants had a right to commence their rail road at a point within the bounds of the city of Schenectady—the north bounds of that city being the middle of the channel of the river.

It is only necessary to advert to facts of public notoriety, to enable us to understand the language used by the legislature in the first section of the charter of this corporation. As the canal was located on the south side of the Mohawk,

1837.

The Mohawk
Bridge Co.
v.
The Utica &
Schenectady
R. R. Co.

1837.

The Mohawk
Bridge Co.
v.
The Utica &
Schenectady
R. R. Co.

several members of the legislature insisted upon having the rail road upon the north side of the river for the accommodation of the inhabitants on that side. And to compel the company thus to locate the road as far west as was supposed to be practicable and convenient, the words, " and running thence, *on the north side of the Mohawk river*, as far as the village of Herkimer," were inserted in the act. These words, however, were not intended to designate the side of the river where the road was to commence ; which was to be either at the city of Schenectady, or near it. Rail roads had then been made, or were nearly completed, between Albany and Saratoga Springs ; and which crossed the toll bridge of the Mohawk Bridge Company at Schenectady. The legislature, therefore, contemplated that the directors of the new corporation might find it for their interest to unite their rail way with the other rail road at the north end of the bridge ; which was *near* but not *at* or in the city of Schenectady. Hence the word *near* is used to show that the corporation was not to be compelled to cross the river with its road, which it might have been obliged to do if the starting point had been absolutely fixed at a point in the city. But the legislature also intended to give the corporation the right to extend their rail way across the river into the city if the directors at the time of the location of their road should deem it expedient to do so. And the language used in the first section of the act of incorporation is very appropriate to carry into effect this intention of the law makers. The preposition *at*, when it precedes the name of a place and denotes situation, frequently means the same as *in* or *within ;* and in that sense it was used by the legislature in this act of incorporation. Even the expression *to* a place has, in the charter of a turnpike company, been construed to mean to a point within the place to which the corporation was authorized to construct its road. (*The Farmer's Turnpike* v. *Coventry*, 10 *John. Rep.* 400.) The directors of this rail road company were therefore authorized by the charter to commence their rail way near the city of Schenectady on the north side of the river, or at some suitable point on the south side of the Mohawk within the city.

1837.

The Mohawk
Bridge Co.
v.
The Utica &
Schenectady
R. R. Co.

But if they commenced within the city they were bound to extend their road from thence directly across the river to the north side before they proceeded west towards the point of termination at the city of Utica.

The erection of the defendants' bridge being authorized by the charter of the corporation, the natural remedy of the complainants for any damage they may sustain by an improper construction thereof, to their injury, is by a suit at law, after such injury has actually occurred. The jurisdiction of this court, however, to interfere by injunction to prevent the erection of a nuisance to the serious and irreparable damage of a complainant is now too well settled to be longer questioned. But the supposed danger to the property of the complainants does not render this a proper case for the interposition of this extraordinary power of the court of chancery. The principles upon which this court should proceed in granting or refusing relief by injunction in cases of this kind are correctly laid down by Lord Brougham in the recent case of *The Earl of Ripon* v. *Hobart*, (*Cooper's Rep. Temp. Brougham*, 343.) If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irreparable mischief, where the complainant's right is not doubtful, without waiting for the result of a trial. But where the thing sought to be restrained is not in itself noxious, but only something which may according to circumstances prove to be so, the court will refuse to interfere until the matter has been tried at law by an action ; though in particular cases the court may direct an issue, for its own satisfaction, where an action could not be brought in such a form as to meet the question. And in applying these principles, if the magnitude of the injury to be dreaded is great, and the risk so imminent that no prudent person would think of incurring it, the court will not refuse its aid for the protection of the complainant's rights, by injunction, on the ground that there is a bare possibility that the anticipated injury from the noxious erection may not happen.

In this case, even if we take the complainants' own allegations as contained in their bill, I cannot say I am perfectly satisfied that the impending danger to their property

1837.

The Mohawk
Bridge Co.
v.
The Utica &
Schenectady
R. R. Co.

by the erection of this bridge is so great as to authorize this court to interfere. And if the affidavits introduced on the part of the defendants are allowed their due weight, it cannot be said that there is any thing more than a mere possibility that the complainants may be seriously injured by the damming up of the ice in the manner specified in the bill.

This disposes of the question of the granting of the injunction as prayed for in the bill; for if the Mohawk Bridge Company are entitled to relief on account of the supposed infringement of their charter by the carrying of passengers across the river in the rail road cars, the only relief to which that company would be entitled is an injunction to restrain the defendants from carrying their passengers across the river on their bridge. But this could not deprive the defendants of the right to have a bridge to cross upon with their locomotives and cars; which would not interfere with the right claimed by the bridge company.

There cannot be a reasonable doubt, however, as to the right of the Utica and Schenectady Rail Road Company, under the provisions of their charter, to transport their passengers across the river in their rail road cars, so long as they confine themselves to those who travel upon the rail road, and while they do not attempt to interfere with the privileges of the toll bridge company by crossing with those who merely wish to pass across the river in that way to avoid paying toll at the other bridge. The legislature has indeed protected the Mohawk Bridge Company in the enjoyment of an exclusive right to carry passengers across the river at Schenectady, to a certain extent, by prohibiting others from establishing a ferry within a certain distance from the toll bridge; but it has not deprived a future legislature of the right to authorize the erection of another bridge within the prescribed limits whenever the public good shall appear to require it. Much less is the legislature deprived of the power to provide for the conveyance of freight or passengers from one part of the state to another, by an improvement which was entirely unknown at the time when the grant to the bridge company was made. And if that grant had in terms given to the corporation the

exclusive right of erecting a toll bridge across the river at Schenectady, this subsequent grant to the rail road company to cross the river with their rail way from Schenectady to Utica, and to transport passengers thereon in the ordinary course of their business in the conveyance of travellers from one place to another, would not have been an infringement the privileges conferred by such prior grant; as the rail road bridge would not be a toll bridge within the intent and meaning of the grant to the first company. Grants of exclusive privileges being in derogation of public rights belonging to the state or to its citizens generally, they must be construed strictly, and with reference to the intent and particular objects of the grant. (*a*)

As the complainants are not entitled to the relief asked for in this case, the motion for an injunction is denied with costs.

---

(*a*)  See the cases of *The Proprietors of the Charles River Bridge Company* v. *The Proprietors of the Warren Bridge,* 11 *Peters' U. S. Reports,* 420 ; and *Dyer* v. *The Tuskaloosa Bridge Company,* 2 *Porter's Alabama Rep.* 296.