*440 The opinion of the Court was delivered by
Wardlaw, J.
We are with defendant on most of the grounds of appeal. The jurisdiction of the Court of Equity in the matter of controversy, called >i'n question by the 7 ground, need not be generally contested: for it is sufficient to determine that it should not be exercised under the circumstances of this case. Judge Story, Eq. Jur., 924, a, says, that Courts of Equity will grant an injunction to restrain a public nuisance only in cases where the fact is clearly made out, upon determinate and satisfactory evidence: for if the evidence be contiicting, and the injury to the public doubtful, that alone will constitute a ground for withholding this extraordinary interposition. He cites the case of Earl Ripon vs. Hobart, Coop. Sel., Ca., 333, 3 Mylne & Keene, 169, in the course of which Lord Brougham says : “It is to .be always borne in mind, that the jurisdiction of this Court over nuisance by injunction at all, is of recent growth, has not till very lately been much exercised, and has at various times found great reluctance on the part of the learned Judges to use it; even in cases where the thing or act complained of was admitted to be directly and immediately hurtful to the complainant.” Lord Eldon seemed to think there was no instance of injunction to restrain nuisance, without trial, Att'y Gen. vs. Cleaver, 18 Ves., 211, and see 3 Meriv., 687, 685, and although this cannot now be maintained, still his doctrine has not been modified beyond the extent indicated by Chancellor Walworth, 6 Paige, 563, “If the thing sought to be prohibited is in itself a nuisance, the Court will interfere to stay irreparable mischief, where the complainant’s right is not doubtful, without waiting the result of a trial.” It may be further remarked, that the remedy sought by the plaintiff is to compel the City Council to pull down the Battery, a permanent obstruction erected at White Point, on the waste at the foot of Meeting street, or alternatively to build up a landing at low-water, at the foot of Council street, and the Chancellor has decreed for the rela- *441 tors, that the Council shall make the landing at the foot of Council street, and if this be refused, that the relators may contract for the work, and raise the money by process against the defendant. Now, the proper office of an injunction, is to inhibit or restrain some act not rightful, proposed to be done, and it is not according to the course of the Court to direct the defendant to proceed actively — to perform some particular act, such as to pull down blinds, 1 Ves., 543, to fill up a ditch, 1 Ves., Jr. 140, or to repair banks, 10 Ves., 192, although the same result may be obtained sometimes by inhibiting opposite conduct. Eden on Injunc., 238, 9. But we recur to the point of the insufficiency of the plaintiffs’ proof.
It would be very tedious to scrutinize, in detail, the particulars of evidence; and we shall express our conclusions on the facts, in general terms. There is not a tittle of proof, that the inhabitants of James island or John’s island, in right or fact, ever had a landing at low-water mark at the foot of Meeting street or of King street. No wharf or head projected to low-water was ever erected at the foot of either street; although, possibly, if we may rely on vague tradition, the necessity of such structure was superseded anciently by the bluff at White Point, until this bluff was swept off by the great hurricane in the summer of 1752. There is evidence that the inhabitants of the islands landed at high tides, or half tides, and for a long time, at the foot of oue of the streets named — but at low-water they were accustomed to go round to East Bay. The strongest testimony as to the use of a landing on South Bay is, that of K. Burden, who deposes: “ My father used one of these landings on South Bay for his small island opposite, and for his plantation on Burden’s island, from 1768, about nine years; and from his plantation alone until the enemy took Charleston in 1780. He died in May, 1785. He used one or other of these landings on South Bay till the time of his death: my mother used one of them during life, and her children and child *442 ren’s children have continued the use up to the present time. I have used Council street as a high-water landing frequently, but frequently had to go to South Bay at low tides. The foot of Meeting street was considered a public landing, but Gibbes’, McKenzies’, and the foot of King street were also used.” Now, this demonstrates that no use had fixed on a definite spot, nor was exacted and yielded as a right: and that the whole was probably merely permissive and vague, springing from the sentiments of good neighborhood, and tfie desire of inviting custom on the part of the city authorities. We may conjecture, that the use, such as it was, had its origin in the Act of 1733, 9 Stat., 79, establishing two ferries, -one called John’s Island ferry, and the other the James Island ferry — but this Act was limited in its duration to the term of seven years, gave right of toll to individuals and imposed duties on them, and fixed the landing on the Charleston side very indefinitely — “to the White Point in Charleston, or as near thereto as may be.” Then the 5th section of the Act of 1783, the charter of the city, 7 Stat., 99, vested in the corporation, “ any vacant low-water lots fronting any of the streets,” and of course merged and extinguished any easement in them not granted by the State, or afterwards acquired by grant from the city, or adverse use for twenty years. Thomas vs. Daniel, 2 McC., 354. It was adjudged in New York, that the public have not the right to use and occupy the soil of an individual adjoining navigable waters as a public landing and place of deposit of property in its transit; although, such user has been continued for more than twenty years with the knowledge of the owner, 20 Wend., 111; 22 Wend., 425. Whatever may have been the right of the islanders as to the foot of Meeting street before 1834, this has been apparently abandoned or extinguished by the nonuser of the right by them for more than twenty years, and their acquiescence until the filing of their bill, October 19, 1855, since 1834 in the erection by the City Council then of the battery, a per *443 manent and solid sea-wall or structure, presenting an absolute obstacle to their enjoyment of the supposed easement. The same term of twenty years, necessary to raise the presumption of the grant of an easement from enjoyment, will raise the presumption of its release or extinguishment, in case of nonuser, especially if this be entire and complete, and caused by an obstacle defeating its exercise, erected by the owner of the soil: 3 Kent, 9 ed., 585; Taylor vs. Hampton, 4 McC., 96; Evans’ Road L., sec. 53. It is not claimed by the bill, that the relators have acquired any right to a landing at the foot of King street as a substitute for the landing at the foot of Meeting street: and, in fact, in a few years after 1834, less than twenty, the battery was extended over the waste fronting King street. Some negotiations ensued between the islanders, through their counsel, aim] the City Council, which resulted, so far as we know, in no other recognition of the right of the relators, than that contained in the Ordinance of October 28, 1853, that the south end of Council street be established as a place of landing for persons and boats for the use of the inhabitants of the city and of the surrounding country. This Ordinance must be interpreted according to the fair import of its terms; for there is nothing in the circumstances under which it was passed, to point the application of it to anything not within its popular acceptation: and the canons of construction allow us no greater latitude. A landing at the end of Council street means a landing in the existing state of the water and highway: and the words cannot be legitimately extended to include, by implication, any obligation on the part of the Council to prolong the street, or erect a wharf accessible in all conditions of the tide. The proof is, that Council street terminates before reaching Gibbes street, and that it was never contemplated to extend it beyond the point of intersection with Gibbes street: that at its present termination, there is a good high-water landing, and that the extension of the street to low-water mark would involve heavy expenses, *444 and intrusion upon private estate. On the whole, the rela-tors have not satisfied us, by determinate and clear evidence, that they had ever, or anywhere, legal right to a low-water landing, dr to a much better lauding than the foot of Council street now aifords.
We may regret this controversy, but it is our function to determine lawful rights on issues properly made, and not to give pragmatical and unauthoritative advice.
Ordered, that the decree be reversed, and the bill be dismissed.
Johnstone, J., concurred.

Decree reversed.