## MASON *vs.* THE BROOKLYN CITY AND NEWTOWN RAIL ROAD COMPANY.

35b 373
61ad482

35b 373
170 NY 4179

The articles of association of a rail road company formed under the general rail road act, stated that the subscribers associated themselves together to form a company " for the purpose of constructing a railway in the counties of Kings and Queens." The third article stated the object of the company to be " to construct a rail road, to commence in the city of Brooklyn at some convenient point, and to terminate at Newtown, Queens county; the rail road to be located in Kings and Queens counties, and its length to be about twenty-five miles." There was a village and also a township of Newtown; the village being about twenty-five miles distant from Brooklyn, and the boundary of the town being also the boundary of the city of Brooklyn. *Held* that without construing the word " Newtown," in the articles, to mean the village, and supposing it to be used to signify the township, there was nothing in the articles themselves to sanction a construction which would terminate the road at the boundary between Newtown and Brooklyn, and restrict the road wholly to the city.

That the natural interpretation of the language was, that the road was to be

built into Newtown, and that it was to pass through the two counties named, in reaching from the one terminus, in Brooklyn, to the other, in Newtown.

When a corporation chartered for the purpose of constructing a railway has located its line, it cannot change the location and adopt a new route, unless the power to do so is expressly granted, in its charter, and then only in the manner indicated. When the power thus conferred upon a company has once been exercised, it is exhausted. *Per* EMOTT, J.

When authority is given to locate and construct a road, upon a route to be indicated in a certain manner, that route, when thus indicated, is in effect incorporated in the charter, as if the authority thus conferred were expressly and distinctly confined to the precise route laid down in the subsequent proceedings; and the powers of the company are as finally and effectually limited to that precise line of road, as if such were the express provisions of the charter. *Per* EMOTT, J.

But a map of a portion of the route intended to be adopted by the company, filed in the county clerk's office as directed by the statute, cannot control or modify the charter of the company; and where the charter or the articles of association, and the map, are in conflict, the map must yield. It cannot work a change of the termini, or an abandonment of a portion of the road.

Such a map will be considered a description of a portion, only, of the route — as in fact but a part of the map required by the statute; so that when a similar map of the residue is filed, both may be considered as one map.

And such a map, professing to be a map of only that portion of a rail road, lying between certain streets in a city, will not justify the conclusion that the rail road begins and ends within the limits of the city, when the articles of association show that the company was organized for the purpose of constructing a rail road from the city to a point beyond its limits.

THIS was an appeal from an order made at a special term, denying, *pro forma,* the defendants' motion to vacate or modify an injunction by which they were forbidden to construct or work their railway in Bridge street, between Willoughby street and Myrtle avenue, Brooklyn. The facts are sufficiently detailed in the opinion of the court.

*David Dudley Field,* for the appellants.

*G. T. Jenks,* for the plaintiff.

*By the Court,* EMOTT, J. The plaintiff, who is an owner of land situate upon Bridge street in the city of Brooklyn,

has brought this action to restrain the defendants from proceeding to construct their road through that street. He alleges that the construction and use of this rail road is not authorized by law, and that it will be specially injurious to him as an owner of adjacent property. Assuming that such special injury to himself is shown, the plaintiff has a right to maintain this action; provided the acts from which it results are illegal. If the defendants have not acquired the franchise or right to lay down and use their rails in this and other streets of Brooklyn, they are committing a nuisance in so doing; and if their acts are specially injurious to individuals, they may be restrained at the instance of such persons.

The main question, and the one principally argued at the bar, in this case, was upon the right and authority of the defendants. This turns upon a single point. The defendants are a corporation, duly organized under the general rail road laws, and derive their privileges and franchises from the provisions of that and other general statutes, having no special grant or charter. The counsel for the plaintiff contends that they are subject to the provisions of the act of April 4th, 1854, chap. 140, relative to the construction of rail roads in cities. The 1st section of that act forbids the common council of any city to permit the construction in any streets or avenues thereof, of "a rail road for the transportation of passengers which *commences and ends in said city,* without the consent thereto of a majority in interest of the owners of property upon the streets in which said rail road is to be constructed being first had and obtained." This provision, it will be seen, applies to a rail road which commences and ends in any such city. In respect to rail roads which pass through the city and do not terminate within it, these are regulated in this respect by sub. 5 of § 28 of the general rail road act of 1850, which authorizes the construction of a rail road along or upon any street or highway, except that for the use of a street in a city the assent of the corporation of the city must be obtained. As we have held that a rail road

constructed upon the grade of a street level with its surface, and used by cars drawn by horses only, is not an appropriation of the soil, but only a mode of using the easement of a highway, which has already been parted with by the owner, it follows that the only condition necessary to the acquisition of a right to construct and use a horse rail road, which passes through and does not commence and end within the city, is the consent of the corporation. If the road be one upon which trains of cars are driven by steam power, the rule established in *Williams* v. *The New York Central Rail Road Co.*, (16 *N. Y. Rep.* 97,) requires something more. On the other hand, if the rail road begins and ends within the city, the common council are forbidden by the act of 1854 to give their assent to its construction or use without the sanction of the adjacent owners, even though it is to be laid on the surface of the highway, and used only by horse cars.

There is a certain incongruity in these provisions, or their effect, but it is an incongruity which the courts cannot remedy. No doubt when these statutes were passed, the legislature acted under the impression that a rail road of any description was merely a highway, and that constructing and using a rail road in a street was but one use of the street as a highway, and was no appropriation of the soil, or of the property of its individual owners. Since the passage of these statutes it has been held otherwise in respect to rail roads using steam power, while again, the exception of horse railways from this latter doctrine produces a material modification of its effect. It may not have occurred to the framers of the act of 1854, in regard to rail roads in cities, that its provisions might be evaded, by constructing roads which should just pass beyond the city bounds, and which, while only nominally ending without, should really, and for all practical purposes, end within the corporation. Perhaps, however, it would be impossible to guard against such evasions. I allude to the matter here for the purpose of saying that no such question is presented to us. Whether a fran-

Mason *v.* Brooklyn City and Newtown R. R. Co.

chise or grant of this description could be avoided or set aside for fraud in procuring it, or for fraud or evasion in its exercise, and at whose instance, if at all, this court could be asked to administer such relief, are questions which we need not now consider. This complaint contains no allegations of fraud in procuring the consent of the common council, or of fraud or intended evasion in exercising the franchise granted. The construction of the track has but commenced, and we must assume that the company will construct such a road as they have legally and formally declared to be the purpose of their organization. The question presented in the present case is, what is that road.

The articles of association of the defendants state that the subscribers "associate themselves together to form a company for the purpose of constructing a railway in the counties of Kings and Queens." The 3d article states the object of the company to be "to construct a rail road with its appurtenances, to commence in the city of Brooklyn at some convenient point, and to terminate at Newtown, Queens county; the rail road to be located in Kings and Queens counties, and its length to be about twenty-five miles." It is contended that the word "at," means at the limit or boundary of, and that one terminus of the road is thus located, by these articles themselves, at the boundary of the town of Newtown, which is also the boundary of the city of Brooklyn, and would restrict the road wholly to that city. Such a construction might be given to the language in question, but it is also susceptible of a different, and to say the least, of a not less natural one. The residue of the instrument, as well as surrounding circumstances, may be called in to aid in construing its phraseology. The two cases cited by the counsel for the plaintiff, *The Farmers' Turnpike Co.* v. *Coventry,* (10 *John.* 389,) and *The Mohawk Bridge Co.* v. *The Utica and Schenectady Rail Road Co.,* (6 *Paige,* 554, 561,) hold that the words "to" and "at," when preceding the name of a place and denoting situation, may mean in, or

within. Thus, in the first case, a turnpike company who were authorized by their charter to carry their road "to the city of Hudson," were held to be entitled to carry the road into the city. In the case before Chancellor Walworth, a corporation which was authorized to build a rail road on the north side of the Mohawk river, commencing "at or near the city of Schenectady," was decided to be entitled to build a bridge across the river, and carry the rail road over it into the heart of the city.

There is a township, and there is also a village of Newtown. The defendants allege in their affidavits that the intended terminus of their road, and the place signified by their articles, is the village. If this be so, a portion of the road necessarily falls without the city of Brooklyn. Without, however, construing the word Newtown in the articles of the company to mean the village, and supposing it to be used to signify the township, I am unable to see any thing in the articles themselves to sanction a construction which would terminate the road at the boundary between Newtown and Brooklyn. The articles declare that the association is formed for the purpose of constructing a railway in Kings and Queens counties, beginning from some point in Brooklyn which is in Kings, and terminating at Newtown in Queens county, and that the road is to be located in Kings and Queens counties, and is to be about twenty-five miles in length. The natural interpretation of this language certainly is, that the road is to be built into Newtown, and that it is to pass through the two counties named, in reaching from the one terminus, in Brooklyn, to the other, in Newtown.

It is however urged that certain acts of the defendants show that the road which they are organized or propose to build, is in reality to begin and end within the city of Brooklyn, or that they have confined themselves to such a road by the location which they have made of their route, and have no right to construct any other.

It is contended that there has been an actual and complete

Mason *v*. Brooklyn City and Newtown R. R. Co.

location of the whole road by the act of the company, in con-
currence with the common council of Brooklyn, and it is said,
first, that this imposes a different construction on the defend-
ants' articles, from that which I have indicated as the more
simple and natural. The defendants filed their articles of
association May 21st, 1860. Afterwards they petitioned the
common council of the city of Brooklyn for the right of way
through the city. On the 30th of July, 1860, a resolution
was adopted by the common council, authorizing the con-
struction of the road through certain streets which are speci-
fied, and which, as I understand it, would carry the track
from a terminus near the river to the city line. In this ap-
plication it is to be observed that the road was described as
intended to extend into Newtown. On the 27th day of
March, 1861, the defendants filed in the office of the clerk
of Kings county a map, which was designated, "map of that
portion of the Brooklyn City and Newtown Rail Road Com-
pany lying between Fulton ferry and Throop avenue, to-
gether with the profile of De Kalb avenue." On the 15th
of April, 1861, on the application of the defendants, the
common council passed a second resolution, authorizing them
to change the line or route of the road, as it had been desig-
nated by the previous resolution, and naming certain other
streets or avenues, through which it was to run to the city
limits. No other map, however, was filed than that already
mentioned, until after this action was commenced.

The argument from these facts for a construction of the
defendants' articles does not strike one very forcibly. The
articles describe the road of the defendants either as one
which terminates at the city line, or as one which passes be-
yond it into Newtown. They cannot be understood to de-
scribe the proposed road as terminating at Throop avenue,
or in any other street short of the line between Brooklyn and
Newtown, and the map as filed, if it be a location and lim-
itation of the entire road, is in conflict with any meaning of
the articles. The act of the company in filing this map, if

it is to have the effect now claimed, may be said to control, but hardly to explain, their articles of association.

The 22d section of the general rail road act prescribes that every company formed under the act, "before constructing any part of their road into or through any county named in their articles of association, shall make a map and profile of the route intended to be adopted by such company in such county," which, after being properly certified, is to be filed in the office of the clerk of the county. The main if not the only object of this map evidently is to notify all persons whose lands are to be taken, of the intended location of the road. The statute directs that notice of the route shall be given to all actual occupants of lands intended to be taken, and provides for the appointment of commissioners, at the instance of parties objecting to the location, to examine and to alter the route, in their discretion. The 23d section of the act provides for a change of the location of the route by the directors, requiring, however, a vote of two thirds of their number for that purpose. If the road is located in a city, no such change can be made, after the road has been once constructed, without the consent of two thirds of the common council.

These provisions evidently refer, primarily and principally, to the acquisition of property by a rail road which is to be constructed over lands owned and occupied by individuals. The provisions made by the statute for altering the route by commissioners, would probably be inapplicable in the case of a horse rail road which pursued streets and avenues for its entire length. It would seem that in such cases there would be no parties entitled to notice of the location of the defendants' road under this section, and probably none who could have been heard to have its location changed. On the other hand, the statute of April, 1854, relative to the construction of rail roads in cities, contemplates an entirely different course of proceeding. It is at least doubtful whether, in the case of street or city rail roads, it is necessary to file any map, and whether these sections of the general rail road act apply.

Mason *v.* Brooklyn City and Newtown R. R. Co.

I do not, however, find it necessary to discuss or determine that question, at present. I shall proceed to consider the proposition presented by the counsel for the plaintiff, assuming that the 22d and 23d sections of the general rail road act are applicable to the defendants.

It is undoubtedly true, as contended by the learned counsel, that when a corporation chartered for the purpose of constructing a railway has located its line, it cannot change the location and adopt a new route, unless the power to do so is expressly granted in its charter, and then only in the manner indicated. This is upon the plain principle that when the power thus conferred upon a company has once been exercised, it is exhausted. When authority is given to locate and construct a road, upon a route to be indicated in a certain manner, that route, when thus indicated, is in effect incorporated in the charter—as if the authority thus conferred were expressly and distinctly confined to the precise route laid down in the subsequent proceedings of the company—and the powers of the company are as finally and effectually limited to that precise line of road, as if such were the express provision of the charter.

The argument for the plaintiff in the present case is, that the route of the defendants' rail road was located by the map, which, as we have already seen, was filed by their authority on the 27th of March, 1861, and that they can now only construct a road along the streets and between the points indicated on this map. After attentive consideration, I am unable to agree to this proposition. The articles of the defendants, as we have seen, describe their road as extending either to the city line or beyond it, into Newtown. A map of a road between two points in the city of Brooklyn, and not reaching the boundary of the city, would not be a map of the road which the defendants were chartered to construct. If they could substitute for the railway which they had acquired a right to build, another road terminating far short of the former, why might they not vary not only their termini, but

their course indefinitely, and change their whole enterprise at pleasure. The argument will prove too much. Such a map as that under consideration cannot control or modify the charter of the company, and where the charter or the articles of association and the map are in conflict, the map must yield. Upon a mere question of route, of course the map filed under the statute is decisive, and becomes pro tanto, as I have said, a part of the charter. But it cannot work a change of the termini, or an abandonment of a portion of the road. This map must either be regarded as a nullity, as not being in conformity with the articles, or it must be considered a description of a portion only of the route, as in fact but a part of the map required by the statute, so that when a similar map of the residue is filed, it may all be considered one map, to answer the law.

It will be observed that the plaintiff does not impeach the franchise claimed by the defendants, because they have not filed a map at all, or complied with section 22 of the general rail road act. It would probably be an answer to this, in a case like the present, where no property is to be taken, and no compensation to be made, that a map of the entire route intended or claimed has been filed, on the 16th day of November, 1861, since this suit was brought. But the learned counsel for the plaintiff claims that the first map was a complete compliance with the statute; that it was such a map as the defendants are required to make and file; and that as such it restricts their entire railway to the distance and the route between the ferry and Throop avenue. Here, I think, is the mistake of his argument. The first map filed by the defendants is not, at least alone and without some addition or supplement, such a map as the act intends. It is not a map of the railway which they proposed to build. It professes, indeed, to be only a map of a portion of their proposed or intended road. If the defendants are required by the statute, and I do not say they are not, to file a map of their route through any and each county which it is to traverse,

Mason *v.* Brooklyn City and Newtown R. R. Co.

before they can commence its construction, they did not comply with this condition by filing the map of the 27th of March, 1861, and it may be their proceedings were imperfect until they filed the second map, in November, 1861. It is true that, in an action brought by the defendants against the Brooklyn and Coney Island rail road, an extract from the complaint in which is furnished to us, the map filed in March is spoken of as a map of the route intended to be adopted by them in the county of Kings. But that is a misdescription of the title of the map itself, and must, I think, be regarded as an oversight or an inaccuracy of the pleader who drew that complaint.

I am of opinion that the statements in the articles of the company will not bear the interpretation which must be given to them, in order to authorize us to regard the map first filed by them as a map of their entire road, and that they cannot be controlled, and the limits as well as the course of the road be determined by such a map, when it is inconsistent with the article. The map first filed by the defendants was a map of a portion of their route only, and cannot be regarded or treated in any aspect, or for any purpose, by either party, as any thing more. It does not, in my opinion, justify the conclusion that the defendants' rail road begins and ends within the city of Brooklyn. The plaintiff has therefore failed to bring the defendants under the provisions of the act of April, 1854, or to show that they have not obtained all the consent and authority which is requisite for the construction of their road through Bridge street. This destroys the foundation of the plaintiff's case, and renders it unnecessary to consider any other question adverted to on the argument.

The order appealed from should be reversed, and the injunction dissolved, with ten dollars costs of the motion, and ten dollars costs of the appeal.

[KINGS GENERAL TERM, December 9, 1861. *Emott, Brown* and *Scrugham,* Justices.]