## SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK *ex rel.* JAMES S. T. STRANAHAN, acting president of the board of trustees of the New York and Brooklyn Bridge, agt. HUBERT O. THOMPSON, as commissioner of the department of public works of the city and county of New York, JOHN D. CRIMMINS and others, composing the department of parks of the city of New York.

*New York (city of) — New York and Brooklyn bridge — Right of, to stretch platform over Chatham and Centre streets and to erect pillars in said streets to support same — Mandamus — When will issue to compel commissioner of public works to grant permit to bridge company to enter upon such streets and take up pavements, etc. — Terminus of bridge — Maps filed from time to time does not affect.*

The authority to locate a railroad or other structure at a certain place does not limit the location to the extreme bounds of that place, but carries with it the authority to locate the same within such bounds.

On a motion for a peremptory *mandamus* to the commissioner of public works and the department of parks " commanding them forthwith to issue and deliver to the board of trustees of the New York and Brooklyn bridge, a permit to enter upon Chatham and Centre streets in the city of New York, near the Hall of Records, and take up the pavements of said streets, and lay foundations for and erect thereupon the structure proposed by the said trustees to complete the said bridge, as shown on a map filed by said trustees in the register's office in New York city, on the 10th of April, 1884; there were two other maps filed, one in 1874 and one in 1877:

*Held, first,* that the bridge trustees have the legal right to do precisely what they propose to do, as indicated by the map of 1884 (*i. e.,* to occupy Chatham and Centre streets), and that they are not precluded by the filing of the maps of 1874 and 1877, from erecting such a structure as is shown on the map or diagram filed in 1884. The maps filed from time to time do not and could not affect the *termini.*

*Second.* The location of the New York terminus at the west side of Centre street is authorized.

*Third.* That the provisions of the act which declare that the said bridge "shall not obstruct any street which it shall cross, but that such street shall be spanned by a suitable arch or suspended platform as shall give suitable height for the passage under the same, for all pur-

poses of public travel and transportation," does not refer to the approach to, or the terminus of, the bridge.

*Fourth.* That as it is the legal right of the trustees to enter upon the performance of the work contemplated by them, it is the public duty of the commissioner of public works and the park commissioners to issue the permits asked for and to license the excavations which are necessary to enable the former to prosecute their work, and a *mandamus* is the proper remedy to compel them so to do.

*Special Term, October,* 1884.

*Bergen & Dykman,* attorneys for relators.

*Aaron J. Vanderpoel* and *William N. Dykman,* of counsel.

*E. H. Lacombe,* counsel to the corporation.

*James C. Carter,* counsel for respondents.

LAWRENCE, *J.*— This is a motion for a peremptory *mandamus* to the commissioner of public works and the department of parks, "commanding them forthwith to issue and deliver to the board of trustees of the New York and Brooklyn bridge a permit to enter upon Chatham and Centre streets in the city of New York, near the Hall of Records, and take up the pavement of the said streets, and lay foundations for and erect thereupon the structure proposed by the said trustees to complete the said bridge, as shown on a map filed by said trustees in the register's office in New York city, on the 10th of April, 1884," &c.

The act entitled "An act to incorporate the New York Bridge Company for the purpose of constructing and maintaining a bridge over the East river, between the cities of New York and Brooklyn, passed April 16, 1867," provides in its tenth section, as follows : "The said bridge shall commence at or near the junction of Main and Fulton streets, in the city of Brooklyn, and shall be so constructed as to cross the river as directly as possible to some point at or below Chatham square, not south of the junction of Nassau and Chatham streets, in the city of New York" (*Laws of* 1867, *chap.* 399).

This act was the first act which was passed by the legislature in reference to the construction of a bridge over the East river, and I cannot find that in any of the subsequent acts passed in 1869 (*Laws of* 1869, *chap.* 26), 1874 (*Laws of* 1874, *chap.* 601), 1875 (*Laws of* 1875, *chap.* 300), 1877 (*Laws of* 1877, *chap.* 165), 1880 (*Laws of* 1880, *chap.* 105), 1882 (*Laws of* 1882, *chap.* 368), 1883 (*Laws of* 1883, *chap.* 228), the location of the terminus of said bridge in the city of New York has been changed or altered. It appears by the affidavit of Mr. Stranahan that Mr. Roebling, the engineer of the original bridge company, surveyed, or had surveyed for him, three lines, and made a report of his proceedings, and that the route which he called the "City Hall route," is described in his report as ending "on Chatham street, near the Hall of Records;" that this report was submitted to a committee of the directors who reported to the board in favor of the City Hall route recommended by the said engineer, which report was adopted on the 24th of October, 1867; that two maps were filed by the New York Bridge Company in the register's office to designate the route of the approach in this city; that such maps showed the location of the bridge, and were respectively filed on the 7th of November, 1874, and the 18th of July, 1877. Mr. Stranahan alleges in his affidavit that both of these maps show the route as extending *beyond* the east line of Chatham street, out into Chatham and Centre streets.

Mr. Kingsley, the president of the trustees of the New York and Brooklyn bridge, in his affidavit, states that the terminus being located by chapter 399 of the Laws of 1867, "at some point at or below Chatham square, not south of the junction of Nassau and Chatham streets," the company was advised that within these limits the terminus must be located by a resolution of its directors, and, accordingly, Mr. John A. Roebling, then engineer of the company, surveyed three lines, and the one which he called the "City Hall route" is described in his report as ending on Chatham street, near the Hall of Records, which report was adopted by the board of

trustees on the 24th of October, 1867, and that thus the terminus of the bridge in New York was located on Chatham street.

The affidavit of Mr. Clarkson, one of the assistants to the counsel to the corporation, alleges that by the said maps on file, the terminus in New York of the said bridge is fixed and located at or near the intersection of Chatham and Centre streets, and is coincident, or nearly so, with the building line on the easterly side of Chatham street. It is conceded that on the 10th of April, 1884, the board of trustees of the Brooklyn bridge filed a third map in the office of the register, in the city of New York, showing the extension of the said bridge across Chatham and Centre streets, and as before stated, the application now under consideration is for a peremptory *mandamus* commanding the respondent to issue permits to the bridge trustees, to enter upon Chatham and Centre streets, and to take up the pavement of said streets for the purpose of completing said bridge in accordance with the plan shown on said map.

By subdivision 9 of section 316 of chapter 410 of the Laws of 1882, commonly known as the consolidation act, it is provided that the department of public works shall have " cognizance and control " * * * " of paving, repairing and repaving streets, and keeping the same clear of obstructions, and of the relaying of pavement removed for any cause." And by section 322 of the same act, it is provided that the department of public works "shall have cognizance, control and general direction in the relaying of all pavement removed for the purpose of constructing * * * foundations of buildings or other structures * * * or for any other purpose, and no removal of pavement for such purpose shall be made until a permit is first had from the said department." Section 86 of the same act, subdivision 5, gives to the common council " power to regulate the opening of street surfaces," &c.

Pursuant to this authority the common council passed an ordinance that " no pavement in any street in the city of New

York * * * shall hereafter be taken up, or the paving stones removed therefrom, for any purpose whatever, without the authority of the department of public works, under the penalty of one thousand dollars for each offense " (*See Revised Ordinances, sec.* 140).

By section 354 of the Revised Ordinances, the commissioner of public works and the commissioners of the department of public parks are required, " each in their respective jurisdictions, whenever granting a permit for any excavation, opening or disturbance of the pavement of the carriage-way of any street," &c. (except in cases where such opening, excavation or disturbance shall be directly authorized by law), to require, &c., " a deposit of such sum as shall be deemed sufficient to cover and pay all expenses," &c.

The sections of the consolidation act, and the provisions of the Revised Ordinances, to which I have above referred, seem to be the only general provisions of law which relate to the giving of permits in cases of the opening of the surfaces of streets in this city.

I do not find in any of the acts relating to the construction of the bridge any provisions as to the effect of the filing of a map by the trustees. It is conceded, as has been before stated, that prior to the filing of the map on the 10th of April, 1884, two maps had been filed by the trustees, neither of which shows the terminus of such bridge in the city of New York as it is now shown upon the map filed in 1884.

The maps filed in 1874, and in 1879, do, however, show a prolongation of the line of the bridge extending, if not beyond Chatham street, certainly beyond the easterly line of said thoroughfare. Neither of these maps shows the precise form of the terminus of the bridge, nor the form of the structure by which it was to be approached or entered upon, and as I cannot find that the acts relating to the bridge prescribe that when a map has been filed, showing the general line of the structure, the trustees are thereby precluded from filing another map, showing in detail the approach to the bridge, I

see no reason, as that approach is within the limits prescribed by section 10· of the act of 1867, to wit, "at a point at or below Chatham square, and not south of the junction of Nassau and Chatham streets," why the trustees are not acting within their legal powers in filing such map, and in erecting or attempting to erect, the approach to, or exit from, the bridge at the place shown on said map. The affidavits presented upon this motion state that a map showing specifically the extent of the approach to the bridge, was not filed before the month of April of this year, because the trustees were under an injunction, procured by the New York Elevated Railroad Company, restraining the bridge authorities from constructing or erecting the approach at any point farther west than the easterly line of Chatham street. That injunction, it appears, has now been dissolved, and it is alleged that the bridge trustees are but exercising their legal powers in filing the map of 1884.

An examination of the various acts relating to the bridge will, I think, clearly show that the trustees have the power to locate the terminus of, or approach to, the bridge, in the manner and at the point indicated on the map of April, 1884. And if they have such power, it would seem that the commissioners of public works (and the park commissioners who have been made parties to this proceeding, because there is a small triangle in the street proposed to be taken, which may come under the jurisdiction of that department) should grant a permit or permits to the trustees to take up the pavement necessary to be removed in constructing the terminus to the bridge.

The cases referred to by the relator's counsel seem to establish the proposition that the authority to locate a railroad or other structure at a certain place, does not limit the location to the extreme bounds of that place, but carries with it the authority to locate the same within such bounds (*see People* agt. *Brooklyn, Flatbush and C. I. R. R.*, 89 *N. Y.*, 75; *Farmers' Turnpike Company* agt. *Coventry*, 10 *Johns.*, 389; *Mohawk Bridge Company* agt. *The Utica and Schenectady R. R. Co.*,

The People ex rel. Stranahan agt. Thompson.

6 *Paige*, 554 ; *Mason* agt. *Brooklyn City and Newtown R. R. Co.*, 35 *Barb.*, 377).

The affidavits read on the part of the relator show that it always was part of the plan of the engineers to cross Chatham and Centre streets, and it is claimed, and as I think, correctly, that the maps filed prior to 1884 show that it was the intention of the trustees to occupy Chatham and Centre streets, but that the maps omitted to show the style of the structure, which omission was supplied by the map of 1884.

I am of the opinion, therefore, that the bridge trustees have the legal right to do precisely what they propose to do, as indicated by the map of 1884, and that they are not precluded by the filing of the maps of 1874 and 1877 from erecting such a structure as is shown on the map or diagram filed in 1884. I do not agree with the counsel for the respondents that the provision of the act which declares that the said bridge "shall not obstruct any street which it shall cross, but such street shall be spanned by a suitable arch or suspended platform as shall give suitable height for the passage under the same for all purposes of public travel and transportation," refers to the approach to, or the terminus of, the bridge. If the construction of the Act of 1867 (*see sec.* 10 *of. Act of* 1867), which is contended for by the learned counsel, is correct, the terminus at the point at or below Chatham square, and not south of the junction of Chatham and Nassau streets, in the city of New York, would necessarily be a terminus elevated above the streets. The great question in my mind, in this case, is as to the form of the remedy which is invoked by the relator If it be conceded that the trustees under the acts relating to the bridge, have the power to locate its terminus at the point indicated by the map of April, 1884, it would seem that they did not require any permit from the city authorities. If they have the power under the statute of the state, that power is exclusive, and does not require for its exercise the permit or consent of the said authorities.

It is claimed, however, on the part of the relator, that the

The People *ex rel.* Stranahan agt. Thompson.

employes of the trustees have been arrested by the police while attempting to carry out the instructions given to them, and such being the case, it is claimed that a *mandamus* should issue to prevent any possibility of a conflict ensuing between those employes and the authorities of the city.

Upon reflection, I am of the opinion that as it is the legal right of the trustees to enter upon the performance of the work contemplated by them, it is the public duty of the respondents to license the excavation which is necessary to enable the former to prosecute their work, and the cases which are cited upon the relator's brief seem to establish the soundness of this view (*See People* agt. *Tremaine,* 17 *How. Pr. R.,* 10; *People* agt. *Perry,* 13 *Barb. Sup. Ct. R.,* 206; *Rex* agt. *Comm'rs,* 2 *Term Rep.,* 381; *Rex* agt. *Cookson,* 16 *East,* 376; *Rex* agt. *Comm'rs of Liverpool,* 2 *M. & S.* [*Selden*], 223; *Smith* agt. *Comm'rs of Portage,* 12 *Ohio Rep.,* 54; *Boon* agt. *Todd,* 3 *Miss.,* 140; *Commonwealth* agt. *Justices,* 2 *Va. C.,* 9; *Ex parte Jenning,* 6 *Cow.,* 418; *Menden* agt. *Wooster,* 10 *Pick.,* 235; *People* agt. *Champion,* 16 *Johns.,* 61; *People* agt. *Collins,* 19 *Wend.,* 26; *People ex rel. Cornell* agt. *Norton,* 12 *Abb. Pr.* [*N. S.*], 47).

The motion that a peremptory *mandamus* issue must therefore be granted. The order will be settled on two days' notice.

Note. — Affirmed by general term November, 1884, on foregoing opinion, no opinion being written by general term. — [Ed.