BROWN *vs.* WOODWORTH and others.

The writ of nuisance must be brought against the party by whom the nuisance was erected; and if he has transferred the land to another, then he by whom the nuisance was erected and, he to whom it was transferred, must *both* be named as defendants in the writ.

An action of nuisance against the alienee of land, alone, for *keeping up and continuing* a nuisance erected by his grantor, was unknown to the common law, and is not authorized by the revised statutes.

Where the count, in an action of nuisance, alleged that the nuisance was *below* the plaintiff's land, and the proof was that it was *adjoining* and *on* the plaintiff's land; *Held* that the variance was fatal.

A *license*, by the owner of land, to erect a dam which shall flow it, cannot be created and annexed to an estate of inheritance, or freehold, so as to bind a subsequent owner, without deed.

The interest created by such a license is a freehold interest by way of easement, in the land flowed; which can only pass by deed.

THIS suit was commenced by writ of nuisance, and the defendants were summoned to answer *wherefore they kept up and continued a certain dam, to the nuisance of the freehold of the plaintiff.* The declaration alleged that the plaintiff was possessed of a certain piece of land, describing it by metes and bounds, through which a stream of water naturally flowed, and

Brown *v.* Woodworth.

that the defendants wrongfully, injuriously and unjustly kept
up and continued a certain dam on, upon and across said
stream below the said lands of the said plaintiff, by means of
which his lands were flowed ; stating the injuries resulting
therefrom.   It appeared on the trial of the cause, that Stephen
Hill, father of the defendant Hill, was the principal in erecting
the dam some 8 or 10 years before.   That at that time the
witness Ralph I. Gates was the owner of the premises flowed,
and assisted in the erection of the dam ; that in 1817, he deed-
ed the premises to Palmer, and that he conveyed them to the
plaintiff on the 8th day of October following.   It appeared that
the defendant Hungerford carried on the mill, and that his co-
defendants Woodworth and Hill were interested with him.
The precise nature of their interest, whether as tenants for
years or in fee, did not appear by the bill of exceptions.   The
dam, instead of being across the stream, below the plaintiff's
land, abutted to and was continued upon it some rods by a
slight embankment.   The defendants moved for a nonsuit
upon the following grounds: 1.   That there was a variance be-
tween the declaration and proof in regard to the location of the
dam.   2.   That the proceedings were not in a case provided for
by the statute, and that Stephen Hill, senior, should have been
joined in the proceedings.   3.   That the defendants were not
liable in this action, the dam having been erected by the con-
sent, license and assistance of Gates, who was then the owner
of the premises flowed by the dam ; at least without a request
to remove the dam before suit brought.   The justice trying the
cause nonsuited the plaintiff.   His rulings upon the several
propositions did not appear, nor was either of them distinguish-
ed in the bill of exceptions, as the one governing the case.

*D. Brown,* for the plaintiff.

*S. T. Holmes,* for the defendants.

*By the Court,* MOREHOUSE, J.   At common law an assize
of nuisance lay only against him who levied the nuisance, or

Brown *v.* Woodworth.

in other words the wrongdoer himself. Upon an alienation of the land wherein the nuisance was set up, the party injured was driven to his *quod permittat prosternere.* This writ was in its nature a writ of right. It lay not at common law for tenant at life, by reason whereof and that there was great delay, the statute of Wm. 2, ch. 25, gave an assize of novel disseisin for the redress of a variety of wrongs. While in use it lay by the heir of the disseisee against the disseisor, or his heir, or his alienee who levied the nuisance, by statute Wm. 2, ch. 24. Long before we were a free people these actions had been turned into actions upon the case, and were out of use in England. They were preserved by legislation, as old remedies, until the revision of the statutes in 1830 ; and in that revision the writ of nuisance as a common law remedy was retained as theretofore accustomed, subject to the provisions of the revised statutes on that subject. (2 *R. S.* 332, § 1.) To return to the assize of nuisance. We have seen that it lay only against the wrongdoer. In 13 Edw. 1, " there was not found any writ of assize of nuisance in the register but what supposed that the tenants in the assize *levaverunt,* and this cannot be said when the tenement *is* transferred to another, for he did not levy the nuisance, but the other only." The 24th chapter of the acts of parliament of that year provides, that the party grieved shall have a writ as well against the alienee as against him that erected it. It was held that that statute extends only to assize of nuisance against him who did the nuisance and his alienee. (2 *Lutw.* 1588.) It does not extend to the alienee of the alienee." It seems by the statute that the action shall be brought against him that did the tort and the tertenants after the alienation. (*Fitz. Natura Brevium,* 124, *H.* 290, *in the note Viner's Ab. Nuisance,* 34.) On the 12th of March, 1787, the legislature of this state, in an act for giving further remedy and regulating the process and proceedings in assizes and other actions, enacted the provisions in the act of Ed. 1, above referred to. (*Laws of N. Y. vol.* 2, 103, *J. & V. ed.* 1789.) Section 5 of the chapter is as follows : " That in cases of nuisance, the plaintiff shall not go without remedy because the land is trans-

Brown *v.* Woodworth.

ferred to another; and further, that when the writ is granted against him or her who hath levied or shall levy the nuisance, the writ shall be made as hath been heretofore used, in the following form: A. B. hath complained to us, that C. D. unjustly and without judgment, hath erected (or made or levied) a house (or a wall, sink, pond, or whatever other thing it may be,) to the nuisance of his freehold. And if such things so levied, erected, or made, be aliened from one to another, the writ shall be thus: A. B. hath complained to us that C. D. and E. F. have *erected.*" This enactment, in precisely the same words, will be found in the revisions of our laws down to and including the revision of 1813. (*See also* 2 *R. S.* 332, § 3.) Writs of nuisance were, by statute, returnable and to be determined in the nature of assizes, either at the supreme court, or at the circuit court, in the county where the nuisance happened. The common law remedies which I have referred to, and which were thus secured by statute, had never been resorted to in this state. An action on the case, or a bill in equity, commended by their simplicity and familiarity to the bar and bench, were the only remedies used in cases of private nuisance. The last revision of our statutes yielded to the wishes of the legislature in abolishing all the real actions known to the common law, not enumerated and retained in ch. 5 of the 3d part of that revision. That by writ of nuisance was among the favored, from an impression "that it might be made very useful because it was, and is, a part of the judgment, *that the nuisance be abated.* The proceedings in the old writ were simplified, in the service of the writ, in proceedings on default, and in the mode of trial, dispensing with a view of the nuisance by the jury. The judgment of the ancient law was retained. The spectacle of a sheriff, with his *posse comitatus,* conquering the perverseness of a defendant, who had rather pay his ill-natured neighbor six cents a year consequential damages, with costs, than voluntarily sacrifice thousands in abating a dam, has not yet been exhibited. The revised statute made no change as to parties, and enacts in language not susceptible of misconstruction, that in case of a transfer of the land to another, the party by whom

the nuisance was erected, and he to whom it was transferred, *shall both* be named as defendants in the writ. (2 *R. S.* 332, § 2.) Assize lies for acts of misfeasance, but for acts of non-feasance an action on the case lies. It does not lie for a laches of my doing what I ought to do. It can only be brought by the tenant of the freehold, and shall be brought against *tenant of the franktenement.* ( *Viner's Ab. Nuisance.*) The writ and the counts in this case concur in complaining of a continuance of the nuisance. It is true, that every continuance of a nuisance, so far as an action for damages is concerned, is held to be a fresh one, and it is upon this assumption, that he who raised a dam, and his alienee continuing it, are allowed to be charged jointly, as having unjustly raised it, and in an action on the case, the plaintiff may declare both ways, for erecting and continuing, or for continuing only, and the latter is sufficient in any case. In the action of assize of nuisance there is no. election. The party by whom the nuisance was erected is defendant, and if he has transferred the land to another, then he by whom the nuisance was erected, and he to whom it was transferred, *shall both* be named as defendants in the writ. There is no room for judicial doubt or criticism, as to the sense in which the legislature used the word *shall* in this statute. There is neither precedent nor opinion to be found in the books, from the time of Edward 1 to the present day, countenancing the assumption, that the legislature meant to give a mere discretionary power, and not to impose a positive duty, by the use of the term *shall,* in the statute in question. The remedy is retained as *heretofore accustomed.* I have shown that it did not lie against any but the very wrongdoer himself, who levied or did the nuisance, at common law, and that the statute gave a new writ when the lands were aliened, against the wrongdoer and alienee, upon a complaint, that both had levied or raised the nuisance. Without the statute there is no writ for such a case. Regarding the statute as remedial, I know of no rule of liberality in its construction, which would authorize the court to entirely dispense with the prescribed proceedings for the attainment of the remedy, or warrant its extension to a

case not expressly provided for. On the contrary, when I reflect upon the irreparable injuries which might be inflicted upon individuals and companies, using the waters of our country as a motive power, if this obsolete remedy should be revived and favored, and consider the ample remedies of the offended party, to abate the nuisance by his own mere act and authority, in some cases, and in all to sue for damages as continuously as its existence occasions any, I think the court should be rigid in exacting a strict compliance with all the requisites of the statute. (1 *Denio,* 436. 1 *Barb. Sup. C. Rep.* 65. *Smith's Com.* 692, § 547.) The plaintiff was properly nonsuited, upon the ground that such a case as his was unknown to the common law, and was not authorized by statute. The variance was between matter of description in the count and the proof. The allegation was, that the dam continued was below the plaintiff's land ; the proof was, that it was adjoining and on the plaintiff's land. The tests of the materiality of variances introduced by the code in chap. 6 of tit. 6, and the provisions for amendments, by the party and the court, or the total disregard of them by the latter, have no application to this case. The counsel citing it on the argument had overlooked § 390. By express provision the act was not to affect proceedings provided for by title 4 of chapter 5 of part 3 of the revised statutes. The variance was therefore fatal. (1 *Denio,* 181. 3 *Id.* 356. 2 *Barn. & Ald.* 363. 2 *Barn. & Cress.* 910.)

The general rule as to license is laid down in Shepherd's Touchstone, 231. It is, "that license, or liberty, cannot be created and annexed to an estate of inheritance or freehold, without deed." In *Monk* v. *Buller,* (*Cro. Jac.* 574,) it was held that a license by a commoner must be by deed. (2 *Saund.* 323, 328.) Many cases will be found considered in *Hawkins* v. *Shippam,* (5 *B. & C.* 221 ;) *Perry* v. *Fitzhowe,* (8 *Adol. & Ellis,* 575.) The license in this case is claimed, not against the person granting it, if any was granted, but a subsequent owner in fee as running with the land, and binding the inheritance ; not by the person to whom it was granted, but by his grantees. It is a claim of an interest in the land, and a free-

hold interest by way of easement in the lands flowed, which could only pass by deed. (2 *Barb. Ch. Rep.* 230. 2 *R. S.* 135, § 6.) In an assize of nuisance the party goes for acts of commission, and the person who committed them would not be entitled to notice to reform the nuisance, before suit brought; for the injured party might abate the nuisance, without notice and without an appeal to a court of justice.

New trial denied.

SAME TERM.    *Before the same Justices.*