ELLSWORTH *vs.* PUTNAM and others.

16b  565
78 AD¹393

An action under the 454th section of the code, to abate a nuisance and to recover damages for its erection and continuance, is a substitute for the statute remedy by writ of nuisance; and the plaintiff must aver, in his complaint, all that was before requisite to sustain an action of that nature.

For an injury to the plaintiff's land by the erection of a nuisance upon land in the possession of the defendants, the complaint should allege that the plaintiff was *the owner of the freehold* affected by the nuisance, at the time the acts complained of were committed; and that the defendants were *tenants of the freehold* of the land whereon the nuisance was erected.

DEMURRER to complaint.   The plaintiff alleged in his com-
plaint that on the 30th of June, 1846, he was seised of a farm
known as letter K. in lot No. 2 of lot No. 6 in the 24th allot-
ment of the Kayaderosseras patent, containing 100 acres, com-
monly called the old steam lot.   That in 1834 the farm was
uncultivated, and in that year was reduced to cultivation, and in
1835 a dwelling house and barn erected thereon, by the persons
then seised, adjacent to a durable stream of pure water flowing
across the lot from west to east, known as dry brook.   That such
farm and such dwelling house and barn had been occupied by the
owner of the same, for farming purposes, until the commence-
ment of this action.   That the use of the waters of dry brook as
it flows across said farm had always been and still was necessary
to the profitable occupation and enjoyment of the said farm, and
was always so used, till the committing of the alleged grievances
by the defendants.   That the defendants, in June, 1847, were
and still were, seised or possessed of a lot of land lying directly
west of and adjoining the said farm of the plaintiff, called letter
J, in lot No. one of lot No. six of said allotment, containing 100
acres.   That dry brook, in its course from the land west of the
defendant's lot flows across the same before it reaches the plain-
tiff's lot.   That until June, 1846, the defendant's lot was wild
and uncultivated.   At that time they cleared a piece of it of
about five acres, lying on both sides of the channel of dry brook.
They then erected a dam across the channel of the brook, and
made a pond, thereby raising the water 7 or 8 feet at the dam,
and causing the water to cover an acre or more by the pond.
They then erected a saw-mill on the channel of the brook, to be
driven by the power of steam, and used the pond to retain the
logs to be sawed, and the water to supply the boiler for the pur-
pose of generating steam.   The defendants used the pond for
keeping logs, and said steam saw-mill to cut up the logs, until
the saw-mill was burned in 1847.   That the saw dust issuing
from the steam saw-mill was by the defendants cast into the
channel of dry brook, and so far filled and choked up the channel
and filled the water with so much saw dust, as to prevent any
use of the water of dry brook in its passage across the plaintiff's

Ellsworth *v.* Putnam.

farm, and thereby wholly destroyed the water of the brook for the plaintiff's farm. The defendants, in June, 1847, erected a second saw-mill on the site of the first, directly over and across the channel of dry brook. When this second steam saw-mill was in process of erection, the plaintiff gave notice to the defendants that the saw dust from such mill must not be cast into the channel of the brook as it prevented any use of the water on the plaintiff s farm for the purposes of the house, or watering cattle or horses. The defendants completed their second steam mill, and from September, 1847, to the time of the commencement of this action continued to use the same. That in 1847 the defendants erected a privy on their lot, near the steam saw-mill, for the use of the hands in the mill, which discharged its deposits directly into the channel of dry brook. That fish and other oils, after being used in the mill, had also been discharged into the brook. That the defendants had put their logs into the pond, ever since the mill was erected, and by the soaking of the wood and bark the water became unfit for use of man or beast. That the plaintiff's farm was injured by the saw dust collecting in certain parts of the channel and there rotting, and rendering the water impure. That the distance from the defendants' saw-mill to the plaintiff's farm was about half a mile. That by means of the premises the defendants had destroyed the use of dry brook for the plaintiff's farm, until the saw dust should be removed. That the plaintiff's farm was of the value of $1000, and the damage thereto, by reason of the nuisance complained of, was one-half of its value. The plaintiff asked for judgment that the defendants abate each of the above mentioned nuisances to his farm, by ceasing to cast any of such offensive substances into the creek; that they clear out from the channel of dry brook, all the saw dust which they had cast into it; that they should pay such damages as had accrued; and for general relief. The defendants assigned several causes of demurrer; which are noticed in the opinion of the court.

*J. Ellsworth*, plaintiff in person.

*E. H. Rosekrans*, for the defendants.

C. L. ALLEN, J.　The code, § 453, abolishes the writ of nuisance, but § 454 enacts that "injuries heretofore remediable by writ of nuisance are subjects of action as other injuries, and in such action there may be judgment for damages, or for the removal of the nuisance, or both." It is under this section of the code that the action is brought. The action therefore is a substitute for the statute remedy by writ of nuisance, and the plaintiff must aver all that was before requisite to sustain an action of that nature. It is not in the nature of an action on the case solely for damages, to sustain which possession alone might be deemed sufficient. But the plaintiff claims that the nuisance be abated and to recover damages for its erection and continuance, up to the commencement of the action.

1. The plaintiff should have averred that he was *the owner of the freehold* affected by the nuisance, at the time the acts complained of were committed. This he has not done. The only averment is that on the 30th day of June, 1846, he (the plaintiff) was seised, &c. of the farm; without stating that he was *owner* of the *freehold* at that time, and *continued* to be so down to the time of erecting the nuisance and of the commencement of the action. He may have conveyed away his interest after that time, or it may have ceased, if it was an estate during the life of another, as it may have been, under the averment. (*Comes* v. *Harris*, 1 *Comst.* 223.) The remedy by writ of nuisance is not encouraged here. It has always been viewed with disfavor by our courts. "There are other remedies," say the court, "more appropriate and efficacious, in which the rights of the respective parties can be better guarded than in this obsolete action." (*Clark* v. *Storrs*, 4 *Barb.* 562.) If the party will have a writ of nuisance, or an action in the nature of it, he must follow the course marked out by the law. A departure from the strict ancient practice will not be permitted. (*Kintz* v. *Mc-*

*Neal,* 1 *Denio,* 436. *Brown* v. *Woodworth,* 5 *Barb.* 550.) I think therefore the complaint is defective on this ground.

2. Again; I am of opinion that the complaint should have averred that the defendants were *tenants of the freehold* of the land whereon the nuisance was erected. It states that the defendants, in June, 1847, were and still are *seised or possessed* of the lot, &c. on which the nuisances complained of are erected; leaving it entirely uncertain whether they are seised in fee or are merely in possession. If in possession merely, an action on the case might lie for damages, but not an action of this nature. But it must be brought against the person erecting at the time he was owner, and if he has aliened, against him and the person or persons to whom he has transferred the title. To *abate the nuisance* the action must be against the owner in fee. (5 *Barb.* 550. 3 *Black. Com.* 220. 15 *Wend.* 525. 2 *R. S.* 332. *Id.* 4*th ed.* 591.)

There must be judgment for the defendant, with leave for the plaintiff to amend on payment of costs.

[Warren Special Term, May 19, 1852. *C. L. Allen,* Justice.]