Davis *v.* Lambertson.

The judgment should be affirmed.

[ONONDAGA GENERAL TERM, October 6, 1868. *Foster, Mullin* and *Morgan,* Justices.]

DAVIS *vs.* LAMBERTSON and others.

As well before as since the Code, a party was at liberty to commence a suit in equity, and in the same action to claim not only an ultimate and complete redress for the injury alleged, but also the damages which he had sustained; not merely to the time of the commencement of the action, as at law, but down to the trial and disposition of the case. *Per* FOSTER, J.

A court of equity has cognizance of an action brought to restrain the commission of a nuisance, whereby an individual is injured, and to compel the discontinuance of it, where it has been committed; and to a considerable extent the suppression of it is in the discretion of the court, in view of all the circumstances of the case. And in such cases the court has not only jurisdiction in regard to prohibiting or preventing the continuance of it, but it can award damages in the meantime; and the trial of the question of damages can be had at the same time when the other questions involved in the case are litigated.

The discretion to be exercised in such cases is not however an unregulated discretion, but is to be exercised according to the rules of law applicable to each particular case.

A court of equity has jurisdiction, and should grant a perpetual injunction, when it is established by a trial that the defendant has created a private nuisance, to the serious injury of the plaintiff, where that nuisance is permanent in its character, so that the injury continues; where complete and ample remuneration cannot be awarded in damages; or where the court can see that to obtain complete and ultimate redress at law several suits may become necessary; or where the injury is otherwise irreparable.

It is enough that it be such an injury as from its nature is not susceptible of being adequately compensated by damages at law; or such as from its continuance, or permanent mischief, must occasion a constantly recurring grievance, which cannot be otherwise prevented but by injunction.

An action by the owner of land upon which there is a durable stream of water, to restrain the owners of a cheese factory, situated higher up on the stream, from polluting the water and rendering it unfit for use, by filth from their

Davis *v.* Lambertson.

hogpens, &c., and from causing an offensive stench in the air, which renders the occupation of the plaintiff's dwelling house uncomfortable, and for damages, is an *equitable action*, where it appears clearly that the acts of the defendants created and continued a nuisance which in its character was a continuing nuisance, and was intended to be, and was, permanent; it being a case where there is no possibility of recovering, at law, in one or any number of actions, the pecuniary damages which the plaintiff has sustained, and is likely to sustain, from its continuance.

And where, in such an action, the referee finds that the corruption of the water by the defendants was a nuisance, and that the plaintiff has sustained damages thereby, to a specified amount, and orders judgment in his favor for that sum, but refuses to grant a perpetual injunction, neither party is entitled to *costs* as against the other, upon the adjustment of costs by the clerk.

APPEAL from an order of the special term, setting aside an adjustment of costs by the clerk of this court, in favor of the defendants.

The plaintiff complained that for several years he had been the owner of a lot of land of about eighteen acres, with a dwelling house thereon in which he lived, which land had a small stream running through it, which was durable, and of good, pure, wholesome water; at which his horses and cattle were accustomed at all times to drink. That the defendants, some years thereafter, and in the spring of 1864, erected a cheese factory near the stream and higher up thereon, at a point near the plaintiff's upper line. That they manufactured cheese at the factory, and continued to do so when the action was commenced, using the milk of from 900 to 1100 cows for that purpose; that they erected hogpens, in which they kept from 150 to 200 hogs, which were fed from the whey produced from such manufacture of cheese. That the pens were built near the stream, and by artificial drains all the filth from the pens was turned into the stream above the plaintiff's land. That they also erected a privy over the stream, and they suffered dead hogs and pigs to lie near the stream, and the filth of such hogs and pigs and of the privy were turned into and ran, together with the whey from the factory,

down the stream, on to and across the plaintiff's land, and rendered the water of the stream filthy and unwholesome for the use of his horses and cattle, which he was accustomed to pasture on said land. That his cows were made sick and their milk and the butter made therefrom were unwholesome and of bad smell and taste. That his horses would not drink of the water, and that he was compelled at great expense to procure water for and to water them elsewhere. That the filth from the cheese factory, hog-pens and privy, and from the dead hogs and pigs, produced a stench which rendered it uncomfortable for the plaintiff and his family to live in the house upon his said premises. And that the water of the stream, on the plaintiff's land, was not only unfit for the use of his cattle and horses, but unfit for any use by him, and that by reason of the continued wrongful acts of the defendants, he had not been able to use the said lands or to keep stock thereon, as he had been accustomed to do. And he demanded judgment for the recovery of the damages, with costs of the action; and that the defendants be restrained by the order of the court from continuing the several wrongful acts and damages alleged in the complaint, and from in any way fouling and rendering impure the stream. The complaint also contained a demand for further relief.

The answer contained a general denial only.

The action was tried before a referee, and on the trial the right of the plaintiff was not controverted, except as to the extent of the acts of the defendants and the extent and kinds of injury which the plaintiff had thereby sustained.

The referee found all the facts alleged in the complaint, except that in regard to the offensive stench at the house of the plaintiff he found that it had occurred but in a very few instances; that the cattle of the plaintiff were not made sick from drinking the water of the stream; and that the butter and milk of the cows were not rendered unwholesome thereby.

The referee found, as conclusion of law, that the corruption of the water of the stream by the defendants was a nuisance, and that the plaintiff had sustained injury thereby. That the injury sustained might be compensated in damages, and that the plaintiff was not, at the time, entitled to a perpetual injunction; and he ordered judgment in favor of the plaintiff, declaring that the defendants corrupted the water of the said stream by discharging into the same the filth from said factory and the hogpens belonging thereto. That the plaintiff has sustained damages thereby to the sum of $3250; and that "if this is to be considered as an equitable action, then each party is to pay his own costs, except that each party is to pay one half of the fees of the referee. The plaintiff is to be at liberty to renew his application for an injunction when so advised."

The clerk of the court, upon application, allowed and adjusted costs in favor of the defendant. The plaintiff appealed from the adjustment to the special term, where an order was made setting aside the adjustment, upon the ground that the action was an equitable one, and that therefore neither party, under the findings and report of the referee, was entitled to costs against the other. From which order of the special term the defendants appealed.

*George A. Harding*, for the plaintiff.

*Robert Earl*, for the defendants.

*By the Court*, FOSTER, J. I have no doubt that this was an equity action, and that it continued to be so, to the final determination made of it by the referee. As well before as since the Code, a party was at liberty to commence a suit in equity, and in the same action to claim not only ultimate and complete redress for the injury alleged, but also the damages which he had sustained; not merely

to the time of the commencement of the action, as at law, but down to the trial and disposition of the cause.

There can be no question that a court of equity has cognizance of an action brought to restrain the commission of a nuisance, whereby an individual is injured, and to compel the discontinuance of it, where it has been committed; and that to a considerable extent, the suppression of it is in the discretion of the court, in view of all the circumstances of the case. And in *such cases* the court has not only jurisdiction in regard to prohibiting or preventing the continuance of it, but it can award damages in the meantime, and the trial of the question of damages can be had at the time when the other questions involved in the case are litigated.

The discretion to be exercised in such cases is not, however, an unregulated discretion, but is to be exercised according to the rules of law applicable to each particular case.

The question before us on this appeal is not whether upon such a complaint as this, a judge or a court would order a preliminary injunction to issue; for that, to a much larger extent, rests in the discretion of the officer to whom the application is made, than is the case after the cause has been tried and the rights of the parties are judicially ascertained. On the preliminary application the judge may require, in many cases, that the rights of the plaintiff shall be first settled by an action at law; or he may find, where no previous trial at law is necessary, that the consequences of granting the preliminary injunction may be of much greater damage to the defendant than the injury alleged is to the plaintiff, and for that reason he may decline to interfere before the trial; or he may find the cause of complaint very trifling, or only temporary, or of such a nature that complete and adequate compensation can be recovered at law, or that one suit at law may furnish an adequate compensation to

the plaintiff, and therefore decline to interfere between the parties.

But a court of equity has jurisdiction and should grant a perpetual injunction, when it is established, by a trial, that the defendant has created a private nuisance to the serious injury of the plaintiff, where that nuisance is permanent in its character, so that the injury continues; where complete and ample remuneration cannot be awarded in damages; or where the court can see that to obtain complete and ultimate redress at law, several suits may become necessary; or where the injury is otherwise irreparable.

It is enough that it "be such an injury as from its nature is not susceptible of being adequately compensated by damages at law, or such as from its continuance, or permanent mischief, must occasion a constantly recurring grievance, which cannot be otherwise prevented but by injunction." (*Fishmongers' Co.* v. *East India Co.*, 1 *Dick.* 163, 164. *Attorney-General* v. *Nichol*, 16 *Ves.* 342, 343.) So though every common trespass is not a foundation for an injunction, where it is only contingent and temporary; yet if it continues so long as to become a nuisance, in such a case the court will interfere and grant an injunction to restrain the person from committing it. (3 *Atk.* 21.) And the court has jurisdiction to grant an injunction, where it is necessary to prevent a multiplicity of suits, although the defendant may be sued at law. (*Mohawk and Hudson Railroad Co.* v. *Artcher*, 6 *Paige*, 83. *Williams* v. *N. Y. Central Railroad Co.*, 16 *N. Y. Rep.* 111, *per Selden, J.*)

In this case it appears, clearly, that the acts of the defendants created and continued a nuisance. In its character it was a continuing nuisance, and it was intended to be and was permanent. It was of considerable pecuniary damage to the plaintiff, and prevented the use by him of the water of the stream, and consequently the use of his

land, as he had been accustomed to, and had the right to use it.

It was sometimes offensive to himself and family at the house where they resided. It was clearly a case where there was no possibility at law of recovering, in any one, or even a dozen actions, the pecuniary damages which the plaintiff had sustained, and was likely to sustain, from its continuance; and, in my judgment, it was not a case where the actual damages, even for the time that was passed, could be or were accurately ascertained. I am aware that the referee found that damages, up to that time, could be ascertained and compensation made therefor, and he attempted to make such compensation, but the reading of his opinion will show that he did no more than to approximate the true amount; and it would seem from his opinion that the main ground for his denial, for the time being, of the injunction, was the great injury which the defendants would sustain by the consequent virtual destruction of the extensive cheese factory which they had erected. And while he denied the injunction then, he held that question in reserve, and authorized by the judgment which he ordered, a renewal of the application therefor, if the plaintiff should thereafter be advised so to do. It is of no consequence to examine the correctness of the decision any further than that it is material to inquire whether this was an equity action when it was determined by the referee; but it is of some importance, in that respect, to ascertain whether there was any such reason for great damage to the defendants, consequent upon the granting the injunction as asked for. It was not asked that their manufactory should be destroyed, but that their privy should not be allowed to stand over the stream; that they should not have artificial drains from their hogpens to the stream; that their dead hogs and pigs should not be so exposed as to contaminate it; and that their hogpens should be so located and so managed, and their surplus

whey so disposed of, as not to pollute the stream. All this could probably be done without any very great expense, and without any real injury to their manufactory. But at all events the law does not allow one to appropriate or injure the property of another permanently, offensively and annoyingly, and permit him also to compel the plaintiff to seek redress in successive suits at law; especially when it is so difficult, as in this case, to give any exact proof of the actual damages.

It does not allow the property of one man to be taken for the use of any other person or association, except in the cases prescribed by the constitution, either with or without compensation, and I can see no difference between allowing the taking of it against his consent, or allowing another to use his own property in such a manner as to pollute it, and seriously impair its value and use. In short, exact justice can only be done by the courts, in such cases, where they restore the injured party, so far as they can, to the rights of which he has been deprived. It would seem, also, from the opinion of the referee, that he supposed the judgment which he then pronounced would induce the defendants thereafter to discontinue the nuisance; because he says, in substance, that if it was continued in the gross manner that it had been, it would call for the exercise of the restraining power of the court. And yet it does not seem so clear to me that an association, powerful as the defendants must be, and who have litigated the action with the determination evinced by them, will be very likely to discontinue the nuisance, while the plaintiff is left to such further redress as he has already had adjudged to him, and which, in the aspect most favorable to him, charges him with costs equal to those incurred by all the defendants, and being in amount some five to ten times as much as the damages reported in his favor.

I have said that the court has reserved the right to the plaintiff, if need be, hereafter to apply, in this action, for

an injunction. The referee could not have meant to re-serve the right to the plaintiff to bring a new suit for the continuance of the nuisance; for, in the first place, no such reservation could be necessary, and in the second place, the court has no power to deny it; and if the plaintiff were compelled to resort to another action, he would be no nearer, upon the principles assumed, of his complete re-dress, than he was upon the first trial, for it would be quite as easy, on the second trial, to prove the true amount of his pecuniary damages, as it was before; and the prob-ability that the injury was a permanent one, would be no stronger than before; and there would be no more reason why he should not, as before, be turned out of court, with his injuries largely increased by the costs and expenses of the suit, and if the order appealed from is set aside, to be charged also with the costs of the defendants.

The principles invoked by the plaintiff when he brought the action are not novel, but to a large extent find an anal-ogy in the action of ejectment at law.

If one trespasses on the lands of another, and the tres-pass continues so that he holds possession of it, the action of ejectment will lie; and it is no answer to it, when the right of the plaintiff is clear, however damaging it may be to the defendant to give up his wrongful possession, that the law can afford ample pecuniary compensation in an action of trespass. The plaintiff has his election which action he will bring, and the courts will not elect for him which he shall prosecute, or turn his action of ejectment, on the trial, into that of trespass.

Now, what the law will do, in a case of clear *legal* right, equity will also do, in an analogous case, where the alleged wrongdoer has no legal title, or equity, to interpose. And I can perceive no good reason why equity should not restore one to his property, in its former good condition, where it has been injured, and is being injured by the direct acts of another; and where his damages, for the injury, cannot

Davis *v.* Lambertson.

be accurately ascertained by a court, quite as effectually as the law, in a thousand instances, restores its possession in cases where there is no doubt that ample and exact damages could be recovered for the trespass. And this analogous rule at law not only includes injuries to lands, but all conversions of specific articles of personal property, and enables the real owner to repossess himself of the property of which he has been improperly deprived. It will never do to allow one party either to take possession of, or to pollute, the property of another by casting offensive substances upon it, and in a manner to show that it is intended to continue it permanently, and then only allow the injured party the liberty to sue in a justice's court. It is the duty of the court, in such a case, to effectually protect him, and to restore him to what he has lost by the wrongful act or acts. In the case before us, there was no pretended claim of right, either legal or equitable, for the defendants to commit the acts complained of. And the only error, as I think, which the referee committed, was in withholding the perpetual injunction prayed for. I repeat, I have no doubt that this was and continued to be an equity action; and the fact that the relief asked for was not granted, does not change its nature.

It very frequently happens that in an equity action the plaintiff fails entirely, and yet the circumstances of the case are such that the court awards costs to neither party; and in the most favorable view of this case, in behalf of the defendants, which I can take of it, that is all that they can claim here.

The order of the special term should be affirmed, with costs.

[ONONDAGA GENERAL TERM, October 6, 1868. *Foster, Mullin* and *Morgan,* Justices.]