## HUTCHINS *vs.* SMITH and others.

63 251
67h 307

63 251
85h 66

63b 251
18ap448

To maintain an action to abate a nuisance, since the remedy is by action and not by writ, the plaintiff must allege that he was the owner of the freehold affected by the nuisance, at the time when the several acts complained of were committed; and the action must be against the owners in fee, in cases where it is brought to abate the nuisance.

Since the Code, a party injured by a nuisance created or continued by another, has a right to come into a court of equity and ask for relief by a perpetual injunction restraining the defendants from so using their property as to annoy him and prevent the enjoyment of his premises, and for damages, as incidental to such equitable relief.

Where defendants have a right to have the issues in the action tried by a jury, if they choose to have the same settled under the rule, but instead of this, the issues are brought to a hearing before the court, without objection, the

---

Hutchins *v.* Smith.

---

defendants will be held to have waived a trial by jury; and the findings of the court are to stand in the place of a verdict of a jury.

And if, in an action for a nuisance, the court reaches the conclusion that the plaintiff's rights have been invaded by the acts of the defendants, so that they have been guilty of maintaining a nuisance, the plaintiff will be entitled to "judgment for damages, or for removal of the nuisance, or both."

Where, by the erection and use of lime kilns by the defendants, upon their own premises, in close proximity to the residence of the plaintiff, the plaintiff's premises were, by reason of the smoke, gas and dust issuing from the kilns, rendered unfit for a comfortable habitation, and the smoke and gas, when inhaled by persons of sensitive lungs, were alike unpleasant and uncomfortable, as well as, to some extent, detrimental to health; *it was held* that the plaintiff was entitled to enjoy his premises free from the presence of the smoke, gas and dust proceeding from the kilns; and that the defendants had no right thus to pollute the air and disturb the comfortable occupation and enjoyment of his premises by the plaintiff; and that their doing so, amounted to a nuisance.

*Held, also,* that the plaintiff was entitled to a perpetual injunction to restrain the continuance of the nuisance caused by operating the lime kilns, to his annoyance or injury; and to damages for past injuries.

THIS is an action to recover damages and for an injunction to restrain the continuance of an alleged nuisance, caused by operating lime kilns in Fayettville.

*B. F. Chapman* and *C. B. Sedgwick,* for the plaintiff.

*S. D. Luce* and *D. Pratt,* for the defendants.

HARDIN, J.   To maintain an action to abate a nuisance, since the remedy is by action and not by writ, the plaintiff must allege that he was the owner of the freehold affected by the nuisance at the time when the several acts complained of were committed; and the action must be against the owners in fee, in cases where it is brought to abate the nuisance. (1 *N. Y.* 223.  5 *Barb.* 550.  16 *id.* 568.   24 *id.* 404.  29 *id.* 391.  12 *N. Y.* 486.)  By section 453 of the Code, the writ of nuisance is abolished, and by section 454 it is provided that "injuries heretofore remediable by writ of nuisance are *subjects of action,* as other

Hutchins *v.* Smith.

injuries, and in such action there may be judgment for *damages*, or for the removal of the nuisance, or both."

The plaintiff in this action seeks to recover damages for past injuries, and the complaint also asks for a perpetual injunction restraining the defendants from so using their lime kilns as to annoy him, and prevent the enjoyment of his premises.

It is now well settled that the plaintiff has a right to come into a court of equity and ask for such relief, together with his damages as incidental to his equitable relief.

"Although he had a remedy at law for the trespass, yet as it was of a continuous nature, he had a right to come into a court of equity and to invoke its restraining power to prevent a multiplicity of suits, and can, of course, recover his damages as incidental to this equitable relief." (*Williams* v. *N. Y. Central R. R. Co.*, 16 *N. Y.* 111.) In *Davis* v. *Lambertson*, (56 *Barb.* 480,) the general term in this district passed upon this question, and the opinion of Justice FOSTER very ably maintains the right to the double relief in one action, and reaches the conclusion that such an action is one in equity.

It has been insisted by the learned counsel for the defendants, that "this is not a clear case, upon the proofs, in respect to the nuisance, and therefore it should be tried before a jury, and this complaint, for that reason, should be dismissed."

Numerous case are found in the books, where a court of equity has refused to grant a preliminary injunction in doubtful cases, until a trial had been had before a jury; and it may be conceded that before the adoption of the Code that was the general rule. (3 *John. Ch.* 282. 16 *Ves.* 338. 6 *Paige*, 563. 11 *Hump.* 403. 1 *Cooper*, 343. 6 *Barb.* 152. 37 *N. Y.* 99. 56 *Barb.* 480.)

But the question presented here is not whether a preliminary injunction should issue, but on the contrary, whether a permanent one shall be granted, in conjunction

with the findings and decision upon the facts relied upon to entitle the plaintiff to damages.

In this case the defendants might have had the issues tried by a jury; had they chosen to have the same settled under the rule. They have been voluntarily brought to a hearing before the court, and the findings of the court are to stand in place of a verdict of a jury, (4 *Rob.* 451; 56 *Barb.* 485;) and the defendants must be held to have waived a trial by jury, (34 *N. Y.* 30; 40 *id.* 504; 40 *How.* 160;) and in case the court reaches the conclusion that the plaintiff's rights have been invaded by the acts of the defendants, so that they have been guilty of maintaining a nuisance, the plaintiff will be entitled to "judgment for damages or for removal of the nuisance, or both." (*Code,* 454.)

The important question in this case, upon the proofs, and to be determined by the court, comes to this; have the defendants, by erecting their lime kilns 204 feet from the dwelling-house of the plaintiff, and there operating them for the purpose of burning stone into lime, by fire made of coal-dust and wood, and allowing the dust, gas and smoke therefrom to come upon, and into, the premises and house of the plaintiff, caused such an interference with the plaintiff's enjoyment of, and such an injury to, his property, as amounts to a nuisance.

The authorities bearing upon this question are very numerous, and an examination of some of them may not be inopportune. In *Bamford* v. *Lumley,* (4 *Com. Bench, N. S.,* 334,) it was held that in the case of a brick kiln, where it was not proved that it was at an improper location, the party was not liable, although the plaintiff's property was directly injured, and his trees and shrubbery killed and destroyed. But in a later case this rule was very considerably modified. In *Tipping* v. *St. Helen's Smelting Co.,* (11 *House of Lords Rep.* 642,) the lord chancellor held that the rule, as above laid down in *Bamford*

v. *Lumley*, only applied to cases of simple *annoyance*, and not to the cases where the property was materially injured. This rule, as modified, was substantially stated and asserted by the chancellor, in this State, in his opinion in *Catlin* v. *Valentine*, (9 *Paige*, 575,) in these words: "To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which renders the *enjoyment of life* and property uncomfortable."

The chancellor's conclusion was approved in *Brady* v. *Weeks*, (3 *Barb.* 159,) by Paige, J., in which it was also held that a slaughter-house in a city is, *prima facie*, a nuisance to persons residing in the neighborhood.

In *Hay* v. *Cohoes Co.*, (2 *N. Y.* 161,) Gardiner, J., says: "The use of land by the proprietors is not therefore an absolute right, but qualified and limited by the *higher right of others* to the lawful possession of their property. To this possession the law prohibits *all direct injury, without regard to its extent*, or the motives of the aggressor. A man may prosecute such business as he chooses, upon his premises, but he cannot erect a nuisance to the annoyance of the adjoining proprietor, even for the purpose of *lawful trade*."

It was held in *Carhart* v. *Auburn Gas Light Co.*, (22 *Barb.* 297,) that the use of land for gas works was not within the usual and ordinary purposes to which real estate is applied, and that whenever the works cause any special injury, they are to be regarded as a private nuisance; and that an action will lie in favor of any person sustaining special injury.

In *Fish* v. *Dodge*, (4 *Denio*, 311,) Judge Bronson very clearly states the rule, and fortifies his statement with numerous cases; and his language, at page 316, is not inapplicable here. He says: "There are many cases in the books where this doctrine has been applied; and among the number are those where a man erects a smith's forge, swine-sty, *lime kiln*, privy or tallow furnace, *so near*

Hutchins *v.* Smith.

the dwelling-house of another as to render it unfit for habitation. It is not necessary to a right of action, that the owner should have been *driven from* his dwelling; it is enough that the enjoyment of *life and property* has been *rendered uncomfortable.*"

The defendant's counsel has cited to the court the case of *Doellner* v. *Tynan,* (38 *How. Pr.* 176,) which was tried at a special term of the superior court, in the city of New York, and the opinion delivered by Monell, J.

That was a case in respect to a blacksmith shop in the city, and it was clear, upon the evidence, that the value of the plaintiff's property was not materially affected by the defendant's business, and the court came to the conclusion that the *street in question had been substantially abandoned to business purposes.*

After quoting the general rule, as already stated, the learned judge added, that "the general doctrine has been applied to a variety of businesses, which were lawful in themselves, but which rendered the residences of others unfit for *comfortable* habitations, such as a smith's forge, (*Bisby* v. *Gill, Lutw.* 69,) swine-sty, (*Alfred's case,* 9 *Reps.* 59, *a,*) *lime* kiln, (*Id., per Gray, Ch. J.,*) and tallow furnace."

The same learned judge quotes 4 *Robertson,* 449, with other cases, approvingly, and adds, at page 181 of his opinion, that, "From these cases, which have been cited, and many others, which might be, it appears to be well established that any lawful business or trade may be a nuisance, if it is conducted in a manner which is injurious to the *comfortable* enjoyment of another man's property. It need *not be detrimental* to health, or endanger life; nor is it necessary that it should directly depreciate the value of the property. If in the manner and for the purposes such property may be used, its enjoyment is so interfered with as to destroy or *greatly impair its comfortable use, it is a nuisance against which the law will protect the injured.*"

Hutchins *v.* Smith.

In the case of *The Manhattan Gas Light Co.* v. *Barker,* (36 *How. Pr.* 238,) the court affirms that, "If a public nuisance work a private injury to a person, that person may have a remedy by a private action for damages, and, in a proper case, may have an injunction. A noisome odor, issuing from a public nuisance, such as issues from the plaintiffs' gas works, will have this effect, if *it pervades the surrounding atmosphere, enters the adjacent dwellings,* and either endangers the health or *disturbs the comfort of those dwelling therein."*

Judge *Willard,* in his able work on *Equity Jurisprudence,* lays down substantially the same rule as many of the preceding cases. He says, at 389: "It is not necessary to constitute a nuisance that the smell created by it is injurious to health. If there be smells *offensive to the senses,* that is enough, as the neighborhood has a right to fresh and pure air. Nor will the presence of other nuisances justify any one of them."

There is ample authority to establish the right of a plaintiff to maintain a suit in which he may both recover damages for a nuisance, and remove it by the aid of the law. (37 *Barb.* 301. 3 *Sandf.* 282. 46 *Barb.* 568, 569. 56 *id.* 480.)

It appears by the proofs, that the defendants, in the winter of 1870 and 1871, erected the two lime kilns across the road from the plaintiff's dwelling-house, near the village of Fayettville, and about forty feet from the highway, and distant from the plaintiff's house 204 feet; and that in the summer of 1871 the defendants commenced and continued to use the same. The plaintiff's house is surrounded, to some considerable extent, with fruit and ornamental trees; that his house is one which has been kept up quite fairly, and occupied by himself and his sister, and their father and mother, for quite a number of years; and that the house and lot, consisting of about two and a half acres, are worth in the neighborhood of $4500. The

defendants' kilns are so constructed that the diameter of each, at the top, is about seventeen feet, and the top is about sixteen feet below the water-table of the plaintiff's house. Each kiln, when filled, takes about fourteen tons of anthracite coal-siftings, and a quantity of wood, inter-mingled with the stones; and that it requires about two days to "fire it up." During the first part of the burning, there escapes from the top of the kiln a dense black *smoke, more or less filled with gas, particles of dust, and the smoke at times, when the wind is in the northwest,* is driven upon the plaintiff's premises, and into and upon his dwelling, ren-dering the air very disagreeable, and unpleasant to breathe.

Numerous witnesses say the smoke is unwholesome and injurious to persons inhaling it, and those of the plain-tiff's family whose lungs are weak and sensitive, testify that they experience injurious effects from inhaling it; that it produces pain in the eyes and head. Some of them testify that the dust from the smoke settles upon the fur-niture and upon the cream of the milk, to such an extent as to be very annoying and unpleasant.

In the absence of the northwest wind, the smoke was not driven upon the plaintiff's premises; nor is the air affected to any considerable extent thereby, upon the plain-tiff's premises. I cannot resist the conclusion that within the authorities already cited, by the use of the defendants' lime kilns, in the manner described by the witnesses, the effects are produced which render the air more or less im-pure when filled with the smoke and gas escaping upon the plaintiff's premises and into his dwelling; that the air is rendered unwholesome and disagreeable, and un-pleasant to inhale. In other words, the plaintiff's prem-ises are rendered unfit for a comfortable habitation, and, to persons of sensitive lungs, the smoke and gas, when in-haled, are alike unpleasant and uncomfortable, as well as to some extent detrimental to health.

It appeared that the gas taken into the lungs of work-

Hutchins *v.* Smith.

men, near the top of the kilns, sometimes produced nausea and vomiting; and these effects, in a much milder degree, seem to be produced upon persons of sensitive constitutions, who inhale the smoke and gas at the distance of the plaintiff's dwelling from the kilns.

The plaintiff is entitled to enjoy his premises free from the presence of the smoke, gas, and dust proceeding from the defendants' kiln, and the defendants have no right thus to pollute the air and disturb the comfortable habitation of, and the enjoyment of the plaintiff's premises.

The defendants' learned counsel insists that the plaintiff caused the location of the lime kilns at the point where they were erected, but the evidence seems to require a finding that the most that he did, in that respect, was to inform the defendants, that if they were determined to locate in the lot named, the point selected would be most satisfactory.

But such information cannot be held to be an irrevocable license to keep up the nuisance to the annoyance and injury of the plaintiff. (*Bingham on Real Property*, *p.* 100. 1 *Keyes*, 115. 29 *N. Y.* 634.) The proof shows that the plaintiff notified the defendants as early as the 7th of January, 1871, that if they built the kilns where they are now located, the plaintiff would prosecute the defendants.

The plaintiff demands, in his prayer, an injunction restraining the defendants "from further running, operating or using said lime kilns." The language is too broad. The kilns are harmless; it is the use of them, in the manner mentioned, which is to be restrained. Possibly they may be used in such a way as not to interfere with the plaintiff's rights. (4 *Rob.* 473. 46 *Barb.* 666. 56 *id.* 480, *and cases cited.*)

Judgment for the plaintiff.

[ONONDAGA SPECIAL TERM, April 23, 1872. *Hardin*, Justice.]