THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* THE METROPOLITAN TELEPHONE AND TELEGRAPH COMPANY, APPELLANT.

*Obstruction of a street — right of the people to bring an action to abate the nuisance — when it should be tried before a jury — right of a telegraph company to erect poles in a street — 1848, chap. 265, as amended by chap. 471 of 1853 — judgment abating a nuisance — when the verdict of the jury must specify the unlawful structure, or the unlawful portion thereof.*

This action was brought by the people against a telegraph company, incorporated under the general law of the State, to have certain poles recently set up by it in Twenty-first street, in the city of New York, adjudged to be a public nuisance, and to have the said nuisance abated and the poles and structures removed, and to have the defendant enjoined from erecting more poles or structures, and to recover the damages already sustained by the plaintiff. The complaint alleged that the telegraph poles had been improperly erected in the street and interfered with its use as a public highway.

*Held*, that the people could maintain the action.

That even if the people could not maintain it, yet as the defect appeared upon the face of the complaint the objection was waived by the failure of the defendant to raise it by demurrer; that if the defect did not appear upon the face of the complaint, the objection should have been taken by answer.

The action was noticed by the plaintiff for trial at a Special Term as an equity cause. A motion by the defendant to strike the cause from the Special Term calendar and send it to a jury was granted, and the action was sent to and tried at the circuit before a jury.

*Held*, that the action was properly tried before a jury, as it was an action to abate a nuisance, and an issue of fact was joined therein.

That even if it should have been tried at a Special Term the defendant would be precluded from raising the objection by reason of the fact that the action was tried before a jury at its instance and upon its motion.

The defendant was authorized by the acts under which it was incorporated (1848, chap. 265, and 1853, chap. 471), to construct lines of telegraph over and along streets and highways, and to erect the poles and fixtures necessary to enable it to transact its business.

*Held*, that the defendant was not limited to the use of such poles as were not of greater size than such as was absolutely necessary for the transaction of its business, but that it was entitled to use such poles as were reasonably sufficient and properly adapted to the fixtures and lines they were to maintain, and over which its business was to be transacted; but they were to be so constructed as not to incommode the public in the use of the street.

Evidence was given tending to show that the walk inside of the line of poles varied in width from six to seven, and from eight to nine, feet; that this space was insufficient for the free passage of persons sometimes meeting upon the walk; that the poles were set inside the curb and varied in their distance from each other from 128 to 166 feet; some of them being larger in diameter than others. The jury rendered a verdict in favor of the plaintiff for six cents damages, upon which a judgment was entered adjudging the poles to be a public nuisance and directed the same to be abated.

*Held*, that as there was nothing to show whether the jury regarded all, or only some of the poles, as unnecessarily erected, or of unnecessary size, the judgment, in so far as it directed the removal of the poles, was unauthorized. To authorize the court to interfere with the existence of the poles there should have been a finding in some form showing which of them and to what extent they exceeded the necessary bounds prescribed by the statute.

That even if the jury intended to find that all of the poles were unnecessarily or improperly erected, yet the damages which they found to result from the injury were so trifling in their amount as to deprive the action of every serious attribute which could be made the subject of equitable complaint.

APPEALS from a judgment, recovered upon the verdict of a jury which directed the removal of telegraph poles erected upon the southerly side of Twenty-first street, from Fifth to Sixth avenues,

in the city of New York, as nuisances, and from orders denying motions for new trials, and other orders relating to certain other proceedings in the action.

This was an action to restrain the completion of a telephone line in Twenty-first street, in the city of New York, to remove the incomplete line as a nuisance, and to restore the street to its original condition.

It was noticed for trial by the plaintiffs at the Special Term as an equity cause, where the defendants made a motion to strike the cause from the Special Term calendar, and send it to a jury. On a hearing this motion was granted, and the action was "sent to the appropriate branch of the court for trial by a jury."

The action was then noticed for trial at the circuit by both parties, a jury was impanneled, and after the plaintiffs' opening, defendant moved to dismiss the complaint, upon the ground, among others, that the case was improperly brought on for trial at the circuit.

The court denied this motion.

The jury, under the charge of the court, returned a verdict for the plaintiffs for nominal damages, and upon that verdict the court adjudged the structure a nuisance, and ordered its removal.

The structure having been completed pending the action, the plaintiffs did not move for any preventive relief.

*Burton N. Harrison*, for the appellant.

*L. E. Chittenden*, for the respondents.

DANIELS, J.:

The scope of the action, as it was set forth in the complaint, included both a legal and equitable cause of action, and as they arose out of the same transaction, it was in that respect a proper pleading under section 484 of the Code of Civil Procedure. By the complaint it was alleged that the telegraph poles had been improperly erected in the street and incommoded and interfered with its use as a public highway in the city of New York. And if those allegations were sustained by evidence as they were made in the complaint, a right of action for damages as well as for the abatement and removal of the poles would be made out and established in the plaintiffs' favor. For a purpresture or unauthorized appropriation of a portion of the street would in that case be made, and

for its correction and removal an action of this nature would afford the proper remedy. And the right to maintain it would not be restricted to the class of cases heretofore provided for by statute. (2 N. Y. Statutes at Large, 343; Code of Procedure, § 454.) For the facts, as they were set forth, would be sufficient to entitle the party complaining to resort to a court of equity for the removal of the unlawful obstructions. Its jurisdiction in this respect has been clearly defined and well sustained. It arose out of the greater efficiency of courts of equity in applying prompt and effectual remedies for the correction of such wrongs. (2 Story Eq. [12th ed.], § 921, 922; § 924; Hilliard on Injunctions, 269; *Knox* v. *The Mayor*, 55 Barb., 406.) And as the people are directly interested in maintaining and preserving the free and unobstructed use of a street, an action to remove and restrain the unlawful appropriation of a portion of it may be brought in their name. They are the party in interest, and under section 449 of the Code may bring and maintain such an action. And for that reason actions of this character have heretofore been prosecuted and sustained in the name of the people. (*People* v. *Vanderbilt*, 26 N. Y., 287; *People* v. *Macy*, 62 How., 65.)

Ordinarily, it is true, these actions have been heretofore brought by the attorney general, but when that has been done, it has been by him as the representative of the people of the State, and depended entirely upon their right to redress. (*Atty. Gen.* v. *Cohoes Co.*, 6 Paige, 133; Ang. on Highways, § 280; *People* v. *Vanderbilt*, *supra*, 297.) And as the actions in that form were dependent upon the interest of the people in the subject matter of the controversy, it is clear, under the Code, that instead of resorting to or following that form, the action may now be in the name of the people, and as such lawfully prosecuted, by virtue of the authority vested in the attorney general. (1 R. S. [6th ed.], 537, § 1.)

But if any well-founded objection could be urged against the right of the people to maintain the action, the fact appeared upon the face of the complaint, and it was, therefore, made a subject of demurrer. (Sub. 3 of sec. 488 of the Code.) If that had not been the case, then the objection was permitted by section 498 to be taken by the answer. But as it was taken in neither of these forms, then by the direct language of section 499 it was waived; and for

these reasons this objection is entitled to no weight in the disposition of either of these appeals.

By the settled practice preceding the enactment of the present Code, that portion of the action which presented the question whether these poles were a nuisance, was the proper subject of trial by jury. (*Hudson* v. *Caryl,* 44 N. Y., 553 ; *Hutchins* v. *Smith,* 63 Barb., 251.) And that practice has been embodied in subdivision 2 of section 968 of the Code of Civil Procedure ; for it has directed that an issue of fact in an action for a nuisance must be tried by a jury, unless such a trial shall be waived, or a reference be directed. The action was, therefore, properly brought to trial in that manner. But if it had not been authorized to be tried by a jury, the defendant would probably have been precluded from raising this objection, by reason of the fact that this mode of trial was directed at the instance and in the disposition of an objection presented by its own counsel.

After invoking and obtaining such a decision, the court would certainly be reluctant in listening to an objection from the same party, that the decision obtained in that manner was erroneous. More than the usual degree of courage on the part of the counsel is required to permit the presentation of this objection under such circumstances ; and the practice itself is not entitled to be either commended or encouraged. Counsel are required to observe the rules of candor and good faith in the presentation of their legal points, and cannot be justified in asking for a decision or direction, which, after it has been made, shall be urged as inaccurate or liable to be repudiated by the counsel obtaining it. The case, however, was a proper one for a trial before the jury, and so far as their decision extended, it was required to be carried into effect by the court ; for it is only when issues have been specially framed, which do not include the entire subject matter of the action, that a further trial under section 972 of the Code has been authorized.

The poles, which were the subject of complaint, were erected by the defendant as a telegraph company, under the authority of chapter 265 of the Laws of 1848, as that was amended by chapter 471 of the Laws of 1853. It was shown upon the trial to have been incorporated under and by virtue of the first of these acts, and it accordingly had the authority to erect telegraph poles for the support of its wires and fixtures and the transaction of its business. But in

doing so, it was restricted to those which were necessary for that purpose, and they were required to be so constructed as not to incommode the public use of the street.   (2 R. S. [6th ed.], 635, § 17; 633, § 5.)   That is the extent of the right which the legislature has conferred upon such a corporation.   And if it has been exceeded, and the public have been incommoded thereby, then so far as that excess has extended, an unlawful appropriation of the street has been made by it, and that would constitute such a purpresture as would authorize the interference of this court for its correction.   And it was to maintain the plaintiff's action under this principle that the evidence was given upon the trial; and as that was produced on behalf of the plaintiff, it tended to show that some or all of the poles were both larger and higher than were necessary for the defendant's use, and in that manner that the defendant had exceeded the authority conferred upon it by the statute.   The walk inside the line of the poles varied in width from between six and seven feet to eight and nine feet; and some evidence was given which tended to show that this space was insufficient for the free passage of persons sometimes meeting upon the walk.   The poles were inside the curb, and varied in their distance from each other from 128 to 166 feet, and some of them were larger in diameter than others.   The plaintiff's evidence upon this subject was answered by testimony given on behalf of the defendant, tending to establish the fact that the poles were neither larger nor higher than they should be, and that no inconvenience whatever was presented by their size to the free and convenient use of the walk; but there was no such preponderance of the evidence in the defendant's favor as rendered it proper for the court to withhold the case from the consideration of the jury.   The facts so alleged and controverted were, on the contrary, very proper subjects to be considered and decided as they were by the jury.   The evidence has been wholly and thoroughly examined, and it leaves the conviction very decided upon the mind that the case was rightly submitted to the jury, and that the several motions made for a new trial were properly denied. Exceptions were taken to evidence received and evidence excluded in the course of the trial, but neither of them seems to have been well founded.   Some of the inquiries allowed were probably objectionable in form, but by the answers which they elicited no

improper evidence was received, and the objections to such questions, therefore, are not capable of being sustained. Exceptions were also taken to the charge by which the case was submitted to the jury, but neither of them seems to be well sustained.

The direction which the defendant had the most reason to complain of was that which limited it to the use of poles no larger than such as were absolutely necessary for its business, for that exceeded the statutory restriction. It did not bind the defendants to the erection of poles no larger than those absolutely necessary, but it permitted those to be supplied and used which were simply necessary and constructed in such a manner as not to incommode the public use of the street. And those terms invested the defendant with the right to use such poles as would be reasonably sufficient and properly adapted to the fixtures and lines they were to maintain and over which its business was to be transacted. And the court afterwards in the directions which were given at the instance of the defendant's counsel so limited the rules to be observed by the jury in their consideration of the case. That presented fairly and intelligently the legal ground of controversy upon which the right to maintain the action depended, and by their verdict the jury supported the theory of the plaintiff.

To the extent to which the poles were necessary, either in size or height, the right to erect and maintain them was given by the legislature, and so far as they were within that authority they could not be alleged to be a nuisance or an unlawful obstruction of the street by the people. (*Davis* v. *Mayor, etc.*, 14 N. Y., 506; *People* v. *Gas Co.*, 64 Barb., 55; 7 Wait on Actions and Defenses, 565; 3 id. 707.)

To that extent the right to erect and maintain the poles was legalized, but wherever that was exceeded in their size or height, the defendant's act was unauthorized. This, as has already been stated, violated the implied restraint created by the statute, and was the legal subject of an action for redress. (*Blanchard* v. *Western Union Tel. Co.*, 60 N. Y., 510.)

And it was upon this theory that the verdict in the case was rendered by the jury. This verdict was, however, for damages only, and as such it was confined to the sum of six cents. Whether under the evidence the jury regarded all the poles as exceeding

their necessary size, or whether the verdict was placed upon the fact that one or more was larger than the others, and in that manner to a greater and unnecessary extent encroached upon the width of the walk, has not been made to appear in the case.

Under the evidence the jury might well have taken the view that these larger poles were improper, because of their greater size. And if they did, that would sustain a verdict of the nature of that rendered by them in the case. So it might have proceeded upon the theory that all the poles were larger and higher than the necessities of the company required they should be, but no finding was declared by them supplying the means of settling these uncertainties. Neither was it stated to what extent either of the poles were larger than they necessarily should have been. While the case, therefore, may very well authorize a recovery of this sum of money, it furnishes no criterion or authority for any relief beyond that to the plaintiff in the action.

It is true that by a judgment in such an action damages may be recovered, and the removal of the nuisance be also directed. (Code, § 1662.) But for the latter purpose something more than a verdict for damages is obviously required. It cannot result from such a verdict as was returned in this action that the court could legally declare all or any particular one of these poles to be an unlawful encroachment upon the sidewalk of the street. It is impossible that such an inference or conclusion can be maintained by this verdict. All that it did was to find that the plaintiff has sustained damages from the acts of the defendants to the extent of six cents. What particular act or acts may have caused even this insignificant injury was in no way stated or declared. From such a verdict the only legal result which could follow would be the plaintiffs' right to recover the amount, together with the costs of the action, where its decision depended upon the proof of title in real estate. It could warrant nothing further, for the simple reason that it included no more than the plaintiffs' right to these damages. To authorize the court to interfere with the existence of the poles there should have been a finding in some form showing which of them and to what extent they exceeded the necessary bounds prescribed by the statute.

There was no evidence in the case by which the defendant could be denied the right to erect and maintain poles in the street. And

for that reason, as well as because of the further fact that the verdict could not be construed as a finding that the erection of telegraph poles in the street was unlawful, no authority was given to the court to direct them to be taken down and removed. This portion of the judgment was entirely unauthorized by the result of the trial, for that was limited to the determination of the amount of damages which the plaintiff was deemed entitled to recover.

These poles were erected in the year 1881, and as the damages found to have been sustained by reason of either of them exceeding the necessary size prescribed by law, were merely nominal, no serious injury can possibly have arisen from that circumstance. And in view of that fact the court would not be at liberty to restrain the maintenance of the poles, even if they were all intended to be included in the verdict of the jury. For the damages resulting from the injury were so trifling in their amount as to deprive the action of every serious attribute which could be made the subject of equitable complaint. And " equity will not interfere    *    *    * to remedy a mere technical or theoretical injury to land." (2 Story Eq. Jur. [12th ed.], § 925, F.)

To secure its interposition there must be some gravity to the complaint presented as the subject matter of the action, for equity will only intervene to prevent irreparable injuries, or to avoid multiplicity of suits. (Hilliard on Injunctions, 270–2 ; *Attorney General* v. *Sheffield Gas Co.*, 19 Eng. Law and Eq., 639 ; 3 Wait on Actions, etc., 707.)

In no possible view of the result of this trial can so much of the judgment be sustained as directed and required the removal of the defendant's telegraph poles from the street. It may be under the evidence that very much smaller and lower poles will answer all the purposes of the defendant along this block. They may very well be so restricted, even though poles of the size and height of those now upon the corners may be required to carry the wires over the elevated railway, or to such other points as it may be necessary to reach in that manner. And from the evidence there would seem to be no insuperable difficulty in the way of placing smaller poles through all the intervening distance after passing the corners of the block. But whether this may or may not be practical is a part of the controversy not at present requiring to be

decided, for by the verdict which was given, the right to remove either of the poles has in no form been secured to the plaintiff. As far as it extended it may very well be sustained, and that will secure to the plaintiff the right to recover these damages, together with the costs incurred in the prosecution of the action. But beyond that the judgment has no legal foundation for its support, and to that extent only it should be reversed, but without costs of the appeal to either party.

Davis, P. J., and Brady, J., concurred.

Judgment modified as directed in opinion, without costs to either party.